IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WESTERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, on behalf of its members, C. WAYNE DORE, CHRISTY SMITH, LEE NETTLES, and DIANE NETTLES, on behalf of themselves and a proposed class of similarly situated persons defined below,<br><br>    Plaintiffs,<br><br>v.<br><br>HARVARD UNIVERSITY, and the PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Defendants. | CIVIL ACTION NO.<br><br>CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiffs, the National Association of the Deaf, on behalf of its members, and C. Wayne Dore, Christy Smith, Lee Nettles, and Diane Nettles, on behalf of themselves and a proposed class defined below, by and through undersigned counsel, file their Class Action Complaint for Declaratory and Injunctive Relief and respectfully allege as follows:

## INTRODUCTION

1.      Defendants Harvard University and the President and Fellows of Harvard College (collectively "Harvard") make available a variety of online content on websites that have received, to date, millions of visitors.  Harvard makes thousands of videos and audio tracks publicly available for free to anyone with an Internet connection, on broad-ranging topics of educational or general interest.  With only a few keystrokes, anyone can access videos ranging from one of the most popular courses in Harvard's history, Michael Sandel's Justice; to archaeological and ethnographical talks on Mesoamericans; to regular podcasts such as the

"HBR IdeaCast" by the Harvard Business Review and the Harvard Kennedy School PolicyCast;

to archives of famous poets reciting their poetry; to "self-help" lectures on such topics as

identifying your personal style of learning and novel approaches to self-improvement; to

Massive Open Online Courses ("MOOCs") on topics such as China..

   2.   While Harvard claims that its online content – which constitutes important

services, privileges and advantages that it provides to the general public – is part of its

"commitment to equity," which "calls on [it] to create effective, accessible avenues for people

who desire to learn but who may not have an opportunity to obtain a Harvard education,"[1]

Harvard has largely denied access to this content to the approximately 48 million – nearly one

out of five – Americans who are deaf or hard of hearing.  Many of these individuals require

captioning to meaningfully access the audio component of online audiovisual and audio content.[2]

Much of Harvard's online content is either not captioned, or is inaccurately or unintelligibly

captioned, making it inaccessible for individuals who are deaf or hard of hearing.  Just as

buildings without ramps bar people who use wheelchairs, online content without captions

excludes individuals who are deaf or hard of hearing.

---

[1]  Harvard University, Online Learning, http://online-learning.harvard.edu/about (accessed February 9, 2015).

[2]  *See, e.g.*, Resolution Letter in Case No. 15-13-6001 from U.S. Dep't of Educ., Office for Civil Rights, Region XV, to Santa J. Ono, President, at 9-10 (Dec. 18, 2014), http://www2.ed.gov/documents/press-releases/university-cincinnati-letter.pdf ("Captioning for the audio portion of a video is important, as individuals who are deaf or hard of hearing may not be able to hear the auditory content. Synchronized captioning is also necessary so that a person reading captions can watch the speakers on a video and associate relevant body language and actions with the speech."); World Wide Web Consortium (W3C)'s Web Content Accessibility Guidelines ("WCAG") 2.0, Understanding Success Criterion 1.2.2, http://www.w3.org/TR/UNDERSTANDING-WCAG20/media-equiv-captions.html (documenting that captions enable people who are deaf or hard of hearing to watch media).

3.      Harvard is fully aware that captioning is necessary to make online content accessible to deaf and hard of hearing people.  Indeed, Harvard, through its Provost's Office, has recognized that "captioning . . . can help reduce barriers to accessing information for individuals with disabilities."[3]

4.      Plaintiffs the National Association of the Deaf ("NAD"), on behalf of its members, and C. Wayne Dore, Christy Smith, Lee Nettles, and Diane Nettles, all on behalf of themselves and a proposed class defined below, bring this civil rights action against Harvard to enforce the requirement of Section 504 of the Rehabilitation Act of 1973 ("Section 504") that an educational institution receiving federal financial assistance – such as the millions of dollars in federal financial assistance that Harvard receives each year – must not deny persons with disabilities the benefits of its programs and activities, an obligation that applies to "all of the operations of . . . a college, university, or other postsecondary institution . . . ." 29 U.S.C. § 794(b)(2)(A).

5.      Plaintiffs also seek to enforce Title III of the Americans with Disabilities Act ("Title III"), which requires, among other things, that a public accommodation: (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) not provide such persons with benefits that are unequal to those provided to nondisabled persons; (3) provide auxiliary aids and services – including captioning – where necessary to ensure effective communication with individuals with a disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than other individuals; and (4) utilize administrative methods, practices and policies that provide persons with disabilities

---

[3]      Harvard University, Guidelines for Using Social Media, http://provost.harvard.edu/files/provost/files/social_media_guidelines_vers_2_0_eff_081814.pdf (accessed February 9, 2015).

equal access to its online content.  Under Title III, places of accommodation include an "undergraduate, or postgraduate private school, or other place of education." 42 U.S.C. § 12181(7)(J).

6.      Because Harvard receives federal financial assistance and is a place of public accommodation, it is subject to Section 504 and Title III.

7.      By not providing captioning, Harvard deprives deaf and hard of hearing individuals the benefits of its online content, benefits afforded to nondisabled individuals, thereby increasing the sense of isolation and stigma that Title III, as well as Section 504, were meant to redress for individuals with disabilities.  As the Department of Justice has stated, "[b]eing unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information."[4]

8.      Despite requests by the NAD to Harvard to ensure that its online content has timely, accurate captioning, Harvard has done so only with regard to a fraction of such content, and even then inadequately.

9.      Harvard's denial of much of its publicly available online content to deaf and hard of hearing persons violates Section 504 and Title III.  Remedying these violations is critical to these statutes' goal of ensuring that people with disabilities have the same access that others take for granted.

10.     Accordingly, Plaintiffs seek injunctive and declaratory relief to ensure that deaf and hard of hearing individuals have equal, effective, and timely access to Harvard's publicly available online content.

---

[4]      U.S. Dep't of Justice, Statement of Eve L. Hill Before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013), *available at* http://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf.

## JURISDICTION AND VENUE

11.     The claims alleged arise under Section 504 and Title III such that the jurisdiction

of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction

over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and

2202 and Rule 65 of the Federal Rules of Civil Procedure.

12.     Venue over Plaintiffs' claims is proper in the District of Massachusetts because

Harvard resides in the District of Massachusetts within the meaning of 28 U.S.C. § 1391, and

because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the District of

Massachusetts.

13.     Assignment to the Western Division is appropriate pursuant to Rule 40.1(D) of

the Local Rules of the United States District Court for the District of Massachusetts.

## PARTIES

14.     Plaintiff the NAD is the nation's premier civil rights organization of, by, and for

deaf and hard of hearing individuals.  The NAD is organized as a non-profit corporation under

the laws of the State of Maryland and has its national headquarters in Silver Spring, Maryland.

The NAD's membership includes individuals and associations from all fifty states and

Washington, D.C.  The NAD is also the United States member of the World Federation of the

Deaf, which comprises more than 120 national associations of deaf people.

15.      The NAD's mission is to preserve, protect and promote the civil, human and

linguistic rights of deaf and hard of hearing people in the United States of America.  This

mission includes ensuring that important tools of daily life – such as websites conveying useful

and educational information to the general public – are accessible to deaf and hard of hearing

people.

16.     The NAD furthers this mission in a variety of ways.  For example, the NAD provides guidance about effective captioning on its website and administers the Described and Captioned Media Program ("DCMP") through a cooperative agreement with the U.S. Department of Education.  The DCMP promotes equal access to communication and learning through described and captioned educational media.  The DCMP provides services designed to support and improve the academic achievement of students who are blind, visually impaired, deaf, hard of hearing, or deaf-blind.  The DCMP has a library of more than 4,000 titles of described and captioned educational media available for loan to teachers, parents, and students who are deaf, blind, hard of hearing, visually impaired, or deaf-blind.

17.     Additionally, the NAD works for passage of legislation guaranteeing equal access and effective communication for individuals who are deaf and hard of hearing.  For example, the NAD has been instrumental in the passage of the Twenty-First Century Communications and Video Accessibility Act of 2010 ("CVAA"), P.L. No. 111-260.

18.     The NAD also devotes resources to educating its members and members of the public regarding their right to access educational programs by publishing position papers on its website.

19.     Further, the NAD has strongly advocated for access to online video content through captioning of audio and audiovisual material in all distribution methods, including internet streaming and downloading.  The NAD filed suit against Netflix, alleging that the company's failure to provide closed captioning on its streaming video content violated the ADA, which resulted in a consent decree requiring Netflix to provide captions on 100% of its on-demand streaming content by September 30, 2014. *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, No. 11-cv-30168-MAP (D. Mass. Oct. 11, 2012) (Dkt. No. 88).  Similarly, in June 2013, NAD

announced that it was working with Apple on captioning of Apple's iTunes library of television and movie offerings to ensure that every title in the iTunes library will contain closed captioning or subtitles by June 2015.  More recently, the NAD reached an agreement with VUDU, Inc., for VUDU to caption 100% of its online content by January 16, 2015, and all newly acquired content thereafter.

20.     Plaintiff C. Wayne Dore is a resident of Amherst, Massachusetts.  Mr. Dore is substantially limited in the major life activity of hearing, and he requires materials to be in an accessible format – including captioning – to be able to participate in and receive the benefit of Harvard's online content.

21.     Plaintiff Christy Smith is a resident of Colorado and is substantially limited in the major life activity of hearing.  Ms. Smith requires materials to be in an accessible format – including captioning – to be able to participate in and receive the benefit of Harvard's online content.

22.     Plaintiff Lee Nettles is a member of NAD and is a resident of Westfield, Massachusetts.  Mr. Nettles is substantially limited in the major life activity of hearing, and he requires materials to be in an accessible format – including captioning – to be able to participate in and receive the benefit of Harvard's online content.

23.     Plaintiff Diane Nettles is a member of NAD and is a resident of Westfield, Massachusetts.  Ms. Nettles is substantially limited in the major life activity of hearing, and she requires materials to be in an accessible format – including captioning – to be able to participate in and receive the benefit of Harvard's online content.

24.     Defendant Harvard University is the oldest institution of higher education in the United States. Defendant Harvard University is a corporation incorporated and with a principal

place of business in Massachusetts.

25.     Defendant President and Fellows of Harvard College is a governing board of

Harvard University.

26.     On information and belief, Harvard has received at all times relevant hereto, and

continues to receive, significant federal financial assistance.  29 U.S.C. § 794(a)-(b).

27.     As an "undergraduate, or postgraduate private school," Harvard is a place of

public accommodation under the ADA. 42 U.S.C. § 12181(7)(J).

**FACTS APPLICABLE TO ALL CLAIMS**

**I.      Harvard's Online Content.**

28.     Harvard creates and produces online content that is made available for free to the

general public, and also controls, maintains and/or administers webpages, websites and other

Internet locations ("Harvard Platforms") on which online content is made available to the general

public.  For years now, Harvard has made available to "learners throughout the world" this

online content, which consists of courses, as well as other educational and general interest

content.[5]  Millions of people across the globe now access the online content produced and/or

made available by Harvard.

29.     Harvard Platforms include without limitation:

        a.      Harvard on YouTube;

        b.      Harvard on iTunes U;

        c.      Harvard on SoundCloud;

        d.      Harvard@Home;

---

[5]     Harvard University, Online Learning, http://online-learning.harvard.edu/about
(accessed February 9, 2015).

  e.  Harvard Extension School, including but not limited to the Extension

    School's Open Learning Initiative;

  f.  Peabody Museum of Archaeology and Ethnology;

  g.  Harvard Museum of Natural History;

  h.  Chandra X-ray Observatory podcasts;

  i.  Harvard's Great Teachers;

  j.  The Institute of Politics John F. Kennedy Jr. Forum;

  k.  Harvard's Life Sciences Outreach Program;

  l.  Woodberry Poetry Room; and

  m.  edX / HarvardX.

30. Public comments on some of Harvard's Platforms reveal the breadth of the audience benefitted by these videos and how enthusiastic that audience is for the opportunity to access the content.  For example, public comments on a personal improvement course on HarvardX state, "The gradual unfolding of what lies beneath my own reactions to day-to-day life has been nothing less than enlightening"; "Week 11 into the course, I just want to say how much I'm enjoying et [?] getting 'richer' from the course . . . . And a special mention too to the great teaching team . . . creating this opportunity and useful conversation for our benefit"; and one commenter begs to be permitted to enroll in the course after enrollment closed.[6]  Public comments on one of Harvard's most popular courses, "Justice," state, "I wish I had the opportunity to be his student when I was young. Would have made me a lot more thoughtful and probably smarter."; "A lecture for every American!"; "I wish every college student would be first

---

[6] Reviews for GSE1.1x: Unlocking the Immunity to Change: A New Approach to Personal Improvement, https://www.coursetalk.com/edx/gse11x-unlocking-the-immunity-to-change-a-new-approach-to-personal-improvement-c3?#tab-reviews (accessed February 9, 2015).

exposed to philosophy by Professor Sandel. I first took a class in philosophy from a local college where the professor spent the first half of the semester attempting to prove their [sic] was no God, and the second half yelling at students for asking questions that interrupted his convoluted lectures. Personal beliefs aside, I didn't learn anything about the actual subject of philosophy. I was totally turned off by the subject until I watched the first lecture by Mr. Sandel, and I was hooked. Definitely worth your time, I'm currently in a political philosophy class, and I've found that some of these lectures have given me great insight into other courses. Probably the best lecture series on iTunes at the moment."; "Studying engineering, it's still interesting for me to watch this, to understand how our societies are built."; "It should be mandatory and essential viewing for everyone, brilliant, if only a president could think and act this way."[7]  Public comments on Sheryl Sandberg's graduation address to the Harvard Business School Class of 2012 state, "Speech from 2 yrs ago but still very inspiring."; "watch it. Worth every minute of your time!"; "Brilliant speech! Must watch!"; and "Great speech, even it has been from 2 yrs ago, still need to keep focusing on unconventional changes."[8]

31.    However, much of the online content produced by Harvard, and/or made available on Harvard Platforms, has no captioning, or has captioning that is so inaccurate as to make the content inaccessible to deaf or hard of hearing individuals.

32.    Harvard has frequently failed to provide accurate captioning to online content that it creates and/or produces.

---

[7]        iTunes Preview – Justice by Harvard University, https://itunes.apple.com/us/course/justice/id566636297 (accessed February 9, 2015); additional comments may be found through iTunes U.

[8]        Harvard Business School, Sheryl Sandberg Addresses the Class of 2012 (May 24, 2012), https://www.youtube.com/watch?v=2Db0_RafutM (accessed February 9, 2015).

33.     Further, on information and belief, Harvard uses administrative methods, practices, procedures and policies which result in online content that it creates and/or produces failing to have accurate captioning.

34.     Also on information and belief, Harvard fails to have in place administrative methods, practices, procedures and policies that ensure that online content that it creates and/or produces has accurate captioning.

35.     Harvard has also frequently failed to ensure that online content made available on Harvard Platforms has accurate captioning.

36.     On information and belief, Harvard uses administrative methods, practices, procedures and policies which result in online content lacking accurate captioning being made available on Harvard Platforms (regardless of whether that content was produced or created by Harvard).

37.     Harvard also on information and belief fails to have in place administrative methods, practices, procedures and policies that ensure that online content made available on Harvard Platforms has accurate captioning.

38.     For example and without limitation, on information and belief, Harvard has not attempted to require that online content created by Harvard personnel or professors be accurately captioned as a condition of that content being made available on Harvard Platforms.

39.     In addition, Harvard often makes uncaptioned or inaccurately captioned online content available on its Platforms without itself first adding accurate captioning.

40.     A review of some examples of Harvard's publicly available online content reveals the breadth of content available, the benefit that content confers to members of the general

public, and that much of the benefit of that content is denied to deaf and hard of hearing persons because it does not have accurate captioning.

### A.  **Harvard on YouTube**

41.     Harvard makes online content available through a number of channels on YouTube.  For example, Harvard University's YouTube channel has, as of February 2015, more than 204,000 subscribers, over 29 million views, and more than 1,900 videos.[9]  Harvard has at least 17 other Harvard-sponsored channels on YouTube, each with their own subscribers and additional videos that together total in the thousands, such as Harvard Business Review's channel, which has, as of February 2015, 234 videos, more than 99,000 subscribers, and more than 6.2 million views.[10]  These figures, and Harvard's reach to a global audience, are growing daily.

42.     Deaf and hard of hearing persons, however, are denied the benefit of many of these videos.  For example, Harvard has posted on YouTube 39 videos in a public lecture series titled "Science and Cooking," which has more than 146,600 views—most of which are entirely uncaptioned;[11] a 2013 Q&A with Bill Gates with 924,292 views that is not captioned;[12] and

---

[9]      Harvard University YouTube Channel – About, https://www.youtube.com/user/Harvard/about (accessed February 9, 2015).

[10]     Harvard Business Review YouTube Channel – About, https://www.youtube.com/user/HarvardBusiness/about (accessed February 9, 2015).

[11]     Harvard University, Science and Cooking Playlist, https://www.youtube.com/playlist?list=PL546CD09EA2399DAB (accessed February 9, 2015). *See, e.g.*, Harvard University, Explorations of Chocolate Textures | Lecture 4 (Oct. 3, 2012), https://www.youtube.com/watch?v=Tt9g2se1LcM (accessed February 9, 2015); Harvard University, The Science of Paella | Lecture 6 (Oct. 18, 2012), https://www.youtube.com/watch?v=dp_ye3sTE_c (accessed February 9, 2015).

[12]     Harvard University, William H. Gates III COL '77, LLD '07 Q&A | The Harvard Campaign Launch (Sept. 24, 2013), https://www.youtube.com/watch?v=cBHJ-8Bch4E (accessed

Sheryl Sandberg's graduation address to the Harvard Business School Class of 2012, which is inaccurately captioned.[13]

**B.    Harvard on iTunes U**

43.    Harvard offers a variety of content on iTunes U, much of which is entirely uncaptioned, such as a symposium on Julia Child to celebrate her legacy on the centenary of her birth; a series of short presentations by Harvard Medical School faculty, alumni, and leadership volunteers called "MED-EDs" that are "built to share and inspire new ideas" on such topics as sleep deficit, stem cell research, and the Affordable Care Act; uncaptioned videos in the public lecture series on "Science and Cooking," which contains additional videos beyond those posted in this same series on YouTube; a weekly podcast called "HBR IdeaCast" by the Harvard Business Review featuring uncaptioned audio tracks on such topics as former Senator Russ Feingold speaking on campaign finance reform, "Sally Ride on Breaking Ground in Aerospace and Education," and a career strategist discussing job hunting; and uncaptioned audio tracks of morning prayers from Harvard's Memorial Church.[14]

**C.    Harvard on SoundCloud**

44.    "Harvard University's SoundCloud channel shares audio content about life and learning that takes place here on campus and around the world."[15]

---

February 9, 2015).

[13]    Harvard Business School, Sheryl Sandberg Addresses the Class of 2012 (May 24, 2012), https://www.youtube.com/watch?v=2Db0_RafutM (accessed February 9, 2015).

[14]    Of these examples, videos are available of all but some of the Science and Cooking tracks and all of the HBR IdeaCast and morning prayers tracks.

[15]    Harvard University SoundCloud Channel, https://soundcloud.com/harvard (accessed February 10, 2015).

45.     Harvard University has more than 355,000 followers on SoundCloud, with approximately 1,400 audio tracks and more than 40 playlists.  As with YouTube, there are also a multitude of sub-channels related to Harvard, each with their own followers and tracks, including but not limited to Harvard Business Review's IdeaCast (boasting more than 627,000 followers and more than 400 tracks), Harvard University Press, and Harvard Divinity School.[16]

46.     Harvard University's content on SoundCloud includes tracks that are not accompanied by transcripts, such as tracks in the series "Lectures from the Shorenstein Center," which comprises 139 tracks totaling more than 135 hours of "[l]ectures and discussions on a wide range of topics, including coverage of race, women, media, politics, and technology;" and tracks from the Harvard Kennedy School PolicyCast, which bills itself as 86 tracks and over 20 hours of "weekly 15-20 minute discussions . . . with prominent thought leaders, researchers and decision makers."[17]

###     D.     **Harvard@Home**

47.     "The mission of Harvard@Home is to provide the Harvard community and the broader public with opportunities for rich in-depth exploration of a wealth of topics through Web-based video programs of the highest caliber.  Harvard@Home enables [users] to experience some of the exciting teaching, cutting-edge research, and noteworthy events that define and

---

[16]     HBR IdeaCast SoundCloud Channel, https://soundcloud.com/hbrideacast (accessed February 10, 2015); Harvard Press SoundCloud Channel, https://soundcloud.com/harvard-press (accessed February 10, 2015); Harvard Divinity School SoundCloud Channel, https://soundcloud.com/harvard-divinity-school (accessed February 10, 2015).

[17]     Harvard University, Shorenstein Center SoundCloud Playlist, https://soundcloud.com/harvard/sets/shorenstein-center/ (accessed February 10, 2015); Harvard University, Harvard Kennedy School PolicyCast SoundCloud Playlist, https://soundcloud.com/harvard/sets/policycast (accessed February 10, 2015).

distinguish the University today—right from [their] desktop."[18]  As of February 2015,

Harvard@Home offered more than fifty programs, on topics from the arts to social sciences,

from history to current affairs, and from literature to science and math.  Harvard@Home

presentations are designed to "bring [users] inside the Harvard classroom to hear current, real-

life lectures or provide [them] with a front-row seat at recent University panels, Alumni College

forums, and other special events.  Harvard@Home is free and open to the public."[19]

48.      Harvard@Home features videos such as a 2003 visit by the Dalai Lama to

Harvard and a program commemorating the 50th anniversary of *Brown v. Board of Education*

introduced by then-Dean of Harvard Law School Elena Kagan.[20]  None of these videos contain

captions.

        **E.      Additional Harvard Online Content**

49.      Harvard Extension School's Open Learning Initiative offers free, noncredit

courses open to the public via the Internet.  Topics include World War Two history, Shakespeare,

and Greek civilization.[21]  Many courses are available both in video and in audio-only tracks, but

---

[18]      Harvard@Home, About Us and Our Mission,
http://athome.harvard.edu/about.html (accessed February 10, 2015).

[19]      *Id.*

[20]      Harvard@Home, His Holiness the Dalai Lama Visits Harvard,
http://athome.harvard.edu/programs/dlv/ (accessed February 10, 2015); Harvard@Home, Brown
v. Board: Looking Back, Looking Forward, http://athome.harvard.edu/programs/bvb/ (accessed
February 10, 2015).

[21]      Harvard Extension School, World War II History: An Open Harvard Course,
http://www.extension.harvard.edu/open-learning-initiative/world-war-history (accessed February
10, 2015); Harvard Extension School, Online Shakespeare Course: Shakespeare After All,
http://www.extension.harvard.edu/open-learning-initiative/shakespeare-after-all-later-plays
(accessed February 10, 2015); Harvard Extension School, The Hero in Ancient Greek
Civilization, http://www.extension.harvard.edu/open-learning-initiative/ancient-greek-
civilization (accessed February 10, 2015).

videos include those that lack captions, and audio includes those that lack transcription.

50.     Harvard's Peabody Museum of Archaeology and Ethnology posts videos and audio tracks of lectures and talks, topics of which include the science of prediction; happiness; the anthropology of waste; the specter of the Internet and the death of writing; and various lectures on the Maya, the Aztec, and Peru.[22] These include videos that are inaccurately captioned and audio tracks that are not transcribed.

51.     Harvard's Museum of Natural History sponsors dozens of public lectures each year by Harvard faculty and other scientists and naturalists, videos of which are posted online. Many of these videos lack captions, such as videos of lectures on elm tree culture in the U.S., biodiversity and the future of cities, and the history and future of New England forests.[23]

52.     NASA's Chandra X-ray Observatory was launched and deployed by Space Shuttle Columbia in July of 1999.  Its website, hosted by Harvard, features a monthly podcast that details recent discoveries and updates of the Chandra mission in video and audio formats.[24] This website offers uncaptioned videos and audio tracks without rolling transcripts, which deny the benefits of this content to deaf and hard of hearing persons.

_____

[22]     Peabody Museum of Archaeology & Ethnology at Harvard University, Peabody Museum Multimedia, https://peabody.harvard.edu/node/806 (accessed February 10, 2015).

[23]     Harvard Museum of Natural History, Lecture Videos, http://hmnh.harvard.edu/past-lecture-videos (accessed February 10, 2015); Harvard Museum of Natural History, A Great Green Cloud: The Rise and Fall of the City of Elms, http://hmnh.harvard.edu/file/282076 (accessed February 10, 2015); Harvard Museum of Natural History, Designing the Urban Ark: Biodiversity and the Future of Cities, http://hmnh.harvard.edu/file/282116 (accessed February 10, 2015); Harvard Museum of Natural History, Challenges and Choices: The History and Future of New England Forests, http://hmnh.harvard.edu/file/284826 (accessed February 10, 2015).

[24]     Chandra X-ray Observatory, Podcasts, http://www.chandra.harvard.edu/resources/podcasts/ (accessed February 10, 2015).

53.    Harvard's Great Teachers profiles Harvard faculty from a student perspective, via classroom discussions, lectures, interviews and performances, and posts those profiles as videos online—without captions.[25]

54.    The Institute of Politics John F. Kennedy Jr. Forum contains an archive of videos featuring world leaders, diplomats, government officials, celebrities, and political strategists discussing issues affecting politics around the globe.[26] Forum topics, with available, uncaptioned online video, include a 1988 JFK retrospective given by his brother Senator Edward Kennedy, a discussion of the 1992 election among presidential historians such as Doris Kearns Goodwin, a 2003 lecture on corporate social responsibility, and a 2008 60th anniversary commemoration of the Universal Declaration of Human Rights featuring Paul Farmer and Amartya Sen.[27]

55.    Harvard's Life Sciences Outreach Program contains numerous "scientist lecture videos," which are uncaptioned, such as lectures on HIV, intelligent design, and the obesity

---

[25]    Harvard Great Teachers, About This Project, http://greatteachers.harvard.edu/about-project (accessed February 10, 2015); *see, e.g.*, Harvard Great Teachers, Lisa Randall, http://greatteachers.harvard.edu/videos/harvards-great-teachers-lisa-randall (accessed February 10, 2015).

[26]    Harvard Institute of Politics, Past Forums, http://forum.iop.harvard.edu/past-forums/all/all/all (accessed February 10, 2015).

[27]    Harvard Institute of Politics, JFK: In His Own Words, http://forum.iop.harvard.edu/content/jfk-his-own-words (accessed February 10, 2015); Harvard Institute of Politics, Putting the Election in Perspective: A Conversation with Presidential Historians, http://forum.iop.harvard.edu/content/putting-election-perspective-conversation-presidential-historians (accessed February 10, 2015); Harvard Institute of Politics, The Intersection of Corporate and Social Responsibility, http://forum.iop.harvard.edu/content/intersection-corporate-and-social-responsibility (accessed February 10, 2015); Harvard Institute of Politics, Sixty Years of Human Rights: The Idea and the Reality, http://forum.iop.harvard.edu/content/sixty-years-human-rights-idea-and-reality (accessed February 10, 2015).

epidemic.[28]

56.    Harvard's Woodberry Poetry Room possesses "a landmark collection of audio recordings," including reading and discussion of poems, available online, but untranscribed, via a Vocarium and a Listening Booth.[29] Among the poets whose poetry is posted in the Listening Room are Wallace Stevens, Adrienne Rich, Ezra Pound, and Seamus Heaney.  The Vocarium "offers a virtual experience of the Poetry Room's multi-author programs, including panels, seminars, oral histories and performances." The Vocarium's postings include roundtables on contemporary American poetry, an event on poetry and comics, and a speaker on "The Battle over Language at Ground Zero."

**F.     edX / HarvardX**

57.    Harvard, along with The Massachusetts Institute of Technology ("MIT"), founded the edX learning platform, a non-profit online initiative that "offers interactive online classes and MOOCs [massive open online courses] from the world's best universities," including Harvard.[30] "Through the edX learning platform . . . anyone with an Internet connection can gain access to courses from Harvard" and other of its partner institutions.[31] Via edX, Harvard and its partners

---

[28]    Life Sciences Outreach Program at Harvard University, Scientist Lecture Videos, http://outreach.mcb.harvard.edu/videos.htm (accessed February 10, 2015).

[29]    Woodberry Poetry Room, About, http://hcl.harvard.edu/poetryroom/about/ (accessed February 10, 2015); Woodberry Poetry Room, The Listening Booth, http://hcl.harvard.edu/poetryroom/listeningbooth/index.cfm (accessed February 10, 2015); Woodberry Poetry Room, The WPR Vocarium, http://hcl.harvard.edu/poetryroom/vocarium/ (accessed February 10, 2015).

[30]    edX, How It Works, https://www.edx.org/how-it-works (accessed February 10, 2015).

[31]    Harvard University, Frequently Asked Questions: Free Courses, http://www.harvard.edu/faqs/free-courses (accessed February 10, 2015).

"aim to extend their collective reach to build a global community of online learners and to improve education for everyone."[32]

58.     Harvard publishes its edX courses on an edX platform titled HarvardX. HarvardX is "a University-wide effort to support faculty innovation in teaching and learning, [and] has engaged more than 70 faculty from across 10 schools, producing online learning experiences that have reached more than 1,000,000 students from 195 countries around the world."[33]

59.     HarvardX's offerings include general interest courses, such as a course on developing your personal theory of learning, a course on Emily Dickinson's poetry, multiple courses on China, and a course on the "immunity to change" approach to self-improvement, an approach lauded by Oprah Winfrey.[34]

60.     Upon information and belief, HarvardX includes courses that are uncaptioned or contain inaccurate captioning.

## II.     <u>Harm to the Plaintiffs.</u>

61.     NAD has standing to sue as an association on behalf of its members. NAD members, including Mr. and Mrs. Nettles, would have standing to sue as individuals because they have been, and continue to be, harmed by Harvard's discriminatory actions, as set forth herein.  Moreover, as set forth above, advocating on behalf of its members on this issue is

---

[32]     Harvard University, Frequently Asked Questions: Distance Learning, http://www.harvard.edu/faqs/distance-learning (accessed February 10, 2015).

[33]     Harvard University, Harvard at a Glance, http://www.harvard.edu/harvard-glance (accessed February 10, 2015).

[34]     edX, HarvardX, https://www.edx.org/school/harvardx (accessed February 10, 2015).

germane to the NAD's interests of ensuring that important tools of daily life, such as websites and online educational courses, are accessible to people who are deaf or hard of hearing.

62.     Because NAD seeks only declaratory and injunctive relief, individual participation by NAD members is not required.

63.     Plaintiff C. Wayne Dore, motivated both by his personal interests and in his role as a tester in this case, has attempted to use Harvard's website(s).  Because of Harvard's failure to provide accurate captioning, he was unable to understand, and thus denied the benefit of, many of the videos he tried to watch.

64.     Mr. Dore has tried to access the following platforms of Harvard, but found uncaptioned or erroneously captioned content on each of them: Harvard on YouTube, Harvard on iTunes U, Harvard on SoundCloud, Harvard@Home, Harvard Extension School's Open Learning Initiative, Harvard Museum of Natural History, Chandra X-ray Observatory, Harvard's Great Teachers, Institute of Politics John F. Kennedy Jr. Forum, Harvard's Life Sciences Outreach Program, and Woodberry Poetry Room.

65.     In the future, Mr. Dore would like to, and intends to, attempt to access Harvard's online content.

66.     Plaintiff Christy Smith, motivated both by her personal interests and in her role as a tester in this case, has attempted to use Harvard's website(s).  Because of Harvard's failure to provide accurate captioning, she was unable to understand, and thus denied the benefit of, many of the videos she tried to watch.

67.     Ms. Smith has tried to access the following platforms of Harvard, but found uncaptioned or erroneously captioned content on each of them: Harvard on YouTube, Harvard on iTunes U, Harvard on SoundCloud, Harvard@Home, Harvard Extension School, Peabody

Museum of Archaeology and Ethnology, Harvard Museum of Natural History, Chandra X-ray Observatory, Harvard's Great Teachers, The Institute of Politics John F. Kennedy Jr. Forum, Harvard's Life Sciences Outreach Program, and Woodberry Poetry Room.

68.     In the future, Ms. Smith would like to, and intends to, attempt to access Harvard's online content.

69.     Plaintiff Lee Nettles, motivated both by his personal interests and in his role as a tester in this case, has attempted to use Harvard's website(s).  Because of Harvard's failure to provide accurate captioning, he was unable to understand, and thus denied the benefit of, many of the videos he tried to watch.

70.     Mr. Nettles has tried to access the following platforms of Harvard, but found uncaptioned or erroneously captioned content on each of them: Harvard on YouTube, Harvard on iTunes U, Harvard on SoundCloud, Chandra X-ray Observatory, Harvard's Great Teachers, Institute of Politics John F. Kennedy Jr. Forum, Harvard's Life Sciences Outreach Program, and Woodberry Poetry Room.

71.     In the future, Mr. Nettles would like to, and intends to, attempt to access Harvard's online content.

72.     Plaintiff Diane Nettles, motivated both by her personal interests and in her role as a tester in this case, has attempted to use Harvard's website(s).  Because of Harvard's failure to provide accurate captioning, she was unable to understand, and thus denied the benefit of, many of the videos she tried to watch.

73.     Ms. Nettles has tried to access the following platforms of Harvard, but found uncaptioned or erroneously captioned content on each of them: Harvard on YouTube, Harvard on iTunes U, Harvard on SoundCloud, Chandra X-ray Observatory, Harvard's Great Teachers,

Institute of Politics John F. Kennedy Jr. Forum, Harvard's Life Sciences Outreach Program, and
Woodberry Poetry Room.

74.     In the future, Ms. Nettles would like to, and intends to, attempt to access
Harvard's online content.

75.     All Plaintiffs have been, and in the absence of an injunction will continue to be,
injured by Harvard's failure to provide timely, accurate captioning of its publicly available
online content.

III.    **Prior Notice to Harvard**

76.     Harvard has long known that captioning is necessary to make its online content
accessible to deaf and hard of hearing persons, and that it was legally responsible to provide such
captioning.

77.     In 2010, the United States Department of Education Office of Civil Rights and the
United States Department of Justice Civil Rights Division issued a joint "Dear Colleague Letter"
("DCL") to university colleges and presidents, making clear that "the general requirements of
Section 504 and the ADA reach equipment and technological devices when they are used by . . .
places of public accommodation as part of their programs, services, activities, goods, advantages,
privileges, or accommodations."[35] (The Department of Education and the Department of Justice
are the two federal agencies with Section 504 and ADA enforcement responsibilities.)

---

[35]     U.S. Dep't of Justice & U.S. Dep't of Educ., Dear Colleague Letter (June 29,
2010), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-20100629.html.

78.     In 2011, the Department of Education issued a "FAQ" document discussing the DCL, and explaining that it reflected "long-standing law," "key principles of Federal disability discrimination law," and "long-standing requirements."[36]

79.     The Department of Education also made clear that the DCL applies to all forms of emerging technology and that "all school programs or activities—whether in a 'brick and mortar [classroom],' online, or other 'virtual' context—must be operated in a manner that complies with Federal disability discrimination laws."[37]

80.     Beginning in December 2013, the NAD repeatedly approached Harvard to request that Harvard ensure that its online content has timely, accurate captioning.

81.     Despite Harvard's knowledge that captioning is crucial to provide deaf and hard of hearing persons access to its online content, and despite its knowledge that regulatory agencies believe that captioning is required by law, and despite NAD's request on behalf of its members that Harvard make its online content accessible, only a fraction of Harvard's online content has accurate captioning.

## CLASS ACTION ALLEGATIONS

82.     Plaintiffs Dore, Smith, Lee Nettles, and Diane Nettles (the "Representative Plaintiffs") bring this action on behalf of themselves and on behalf of a class defined as follows: individuals who are deaf or hard of hearing who have been, or in the future will be, denied the full and equal enjoyment of online content for the general public produced or created by

---

[36]     U.S. Dep't of Educ., Frequently Asked Questions About the June 29, 2010, Dear Colleague Letter, at 1 (May 26, 2011), http://www2.ed.gov/about/offices/list/ocr/docs/dcl-ebook-faq-201105.pdf.

[37]     *Id.* at 4.

Harvard, and/or made available to the general public by Harvard on Harvard Platforms, because that content is not accurately captioned.

83.     Joinder of all members of the proposed class would be impracticable because, without limitation, the class consists of numerous individuals who are geographically diverse, these individuals are very difficult to identify, and they are unlikely to be able to bring individual suits.

84.     There are numerous common questions of law and fact, including but not limited to:

a.     Whether provision of online content constitutes a service, facility, privilege or advantage of Harvard;

b.     Whether provision of online content constitutes a program or activity of Harvard;

c.     Whether Section 504 and/or Title III require Harvard to caption its online content so that deaf and hard of hearing individuals are not denied the benefits of its services, facilities, privileges, advantages, programs and/or activities;

d.     Whether Section 504 and/or Title III require Harvard to caption its online content so that deaf and hard of hearing individuals are not provided with benefits that are unequal to those provided to nondisabled persons;

e.     Whether captioning constitutes an auxiliary aid or service under Section 504 and/or Title III;

f.     Whether Section 504 and/or Title III require Harvard to caption its online content to ensure that deaf and hard of hearing individuals are provided with effective communication;

g.     Whether Harvard has policies or practices that result in uncaptioned or

inaccurately captioned online content;

h.     Whether Harvard fails to have in place policies or practices to ensure that online

content is accurately captioned;

i.     Whether Harvard has failed to make reasonable modifications in policies,

procedures, and practices that are necessary to provide persons with hearing

disabilities meaningful, effective access to its online content.

85.     The claims of the Representative Plaintiffs are typical of the claims of the class

because they arise from the same course of conduct engaged in by Harvard, are based on the

same alleged violations of the same statutes and regulations, and seek the same relief.

86.     The Representative Plaintiffs will fairly and adequately represent the interests of

the class.  The Representative Plaintiffs have no interests adverse to the interests of other

members of the class.  Further, the attorneys they have retained include counsel who have been

appointed as class counsel in, and have successfully litigated, numerous disability rights class

actions across the country.

87.     Finally, certification under Rule 23(b)(2) is proper here because Harvard has

acted or refused to act on grounds generally applicable to the class, thereby making appropriate

final injunctive or declaratory relief with respect to the class as a whole.

**FIRST CLAIM FOR RELIEF**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.***

88.     Plaintiffs incorporate by reference each and every allegation herein.

89.     Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "No

otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability,

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

90.     Harvard is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

91.     The Rehabilitation Act defines "program or activity" to "mean[] all of the operations of . . . a college, university, or other postsecondary institution."  29 U.S.C. § 794(b)(2)(A); 34 C.F.R. § 104.3(k).  Harvard is a "college, university, or other postsecondary institution."  29 U.S.C. § 794(b)(2)(A); 34 C.F.R. § 104.3(k).  Harvard's publicly available online content is therefore a "program or activity" of Harvard within the meaning of the Rehabilitation Act.

92.     Harvard has engaged in illegal disability discrimination, as defined by the Rehabilitation Act, including without limitation:

•       directly or through contractual, licensing or other arrangements, denying opportunities for deaf and hard of hearing people to participate in or benefit from its aids, benefits, or services;

•       directly or through contractual, licensing or other arrangements, affording deaf and hard of hearing people opportunities to participate or benefit from its aids, benefits and service that are not equal to, or effective as, those afforded others;

•       directly or through contractual, licensing or other arrangements, limiting deaf or hard of hearing people in the enjoyment of rights, privileges, advantages, and/or opportunities enjoyed by others receiving Harvard's aids, benefits, or services;

- utilizing methods of administration (i) that have the effect of subjecting deaf or hard of hearing people to discrimination on the basis of handicap, and (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of Harvard's programs and activities with respect to deaf and hard of hearing people;

- failing to provide an auxiliary aid or service where necessary to ensure that deaf or hard of hearing people are not denied effective communication and are not excluded, denied services or otherwise treated differently than others; and/or

- failing to make reasonable modifications in policies, practices or procedures where necessary to afford its services, privileges, advantages or accommodations to deaf or hard of hearing persons.

93.     Harvard has violated the Rehabilitation Act by, without limitation, failing to provide accurate captioning for its online content, thereby denying deaf and hard of hearing persons the benefits of that online content, providing them with a benefit that is not equal to that provided others, and denying them effective communication.

94.     Harvard has further violated the Rehabilitation Act by, without limitation, utilizing administrative methods, practices and policies that allow its online content to be made available without accurate captioning.

95.     Harvard's ongoing and continuing violations of Section 504 have caused, and in the absence of an injunction will continue to cause, harm to the plaintiffs and the class.

## SECOND CLAIM FOR RELIEF
### Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.*

96.     Plaintiffs incorporate by reference each and every allegation herein.

97.     Title III requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns

. . . or operates a place of public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

98.     Harvard operates an "undergraduate, or postgraduate private school, or other place

of education," which is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(J).

99.     Harvard has engaged in illegal disability discrimination, as defined by Title III,

including without limitation:

•       directly, or through contractual, licensing, or other arrangements denying

opportunities for deaf and hard of hearing people to participate in and benefit from its aids,

benefits, and services;

•       directly, or through contractual, licensing, or other arrangements affording deaf

and hard of hearing people opportunities to participate in and benefit from its aids, benefits, and

services that are not equal to, or effective as, that afforded others;

•       utilizing methods of administration (i) that have the effect of discriminating on the

basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common

administrative control;

•       failing to provide auxiliary aids and services where necessary to ensure that deaf

or hard of hearing people are not denied effective communication and are not excluded, denied

services or otherwise treated differently than others; and/or

•       failing to make reasonable modifications in policies, practices or procedures

where necessary to afford its services, privileges, advantages or accommodations to deaf or hard

of hearing people.

100.    Harvard has violated Title III by, without limitation, failing to provide accurate

captioning for its online content, thereby denying deaf and hard of hearing persons the benefits

of that online content, providing them with a benefit that is not equal to that provided others, and denying them effective communication.

101.    Harvard has further violated Title III by, without limitation, utilizing administrative methods, practices and policies that allow its online content to be made available without accurate captioning.

102.    Harvard's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to the plaintiffs and the class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment as follows:

1.    A declaration that Harvard's conduct as alleged here has violated, and continues to violate, Section 504 of the Rehabilitation Act of 1973, Title III of the Americans with Disabilities Act of 1990, and the regulations promulgated under those statutes;

2.    Issuance of a permanent injunction requiring Harvard to provide timely, effective communication through comprehensive and accurate captioning of the online content that it creates and/or produces, as well as the online content that it makes available on Harvard Platforms, and to ensure that such violations do not occur in the future, as well as providing for appropriate interim injunctive relief;

3.    Award of Plaintiffs' reasonable attorneys' fees and costs, as provided by law; and

4.    Such other relief as the Court finds just and proper.

Respectfully Submitted,

NATIONAL ASSOCIATION OF THE DEAF, C. WAYNE DORE, CHRISTY SMITH, LEE
NETTLES, and DIANE NETTLES

By their Attorneys,


/s/ Thomas P. Murphy_____
Thomas P. Murphy, Esq., Board of Bar Overseers no. 630527
DISABILITY LAW CENTER, INC.
32 Industrial Drive East
Northampton, Massachusetts, 01060
(413) 584-6337 / (800) 222-5619 Voice
tmurphy@dlc-ma.org

Christine M. Griffin, Esq., Board of Bar Overseers no. 564420
Stanley J. Eichner, Esq., Board of Bar Overseers no. 543139
Richard M. Glassman, Esq., Board of Bar Overseers no. 544381
DISABILITY LAW CENTER, INC.
11 Beacon Street, Suite 925
Boston, MA 02108
(617) 723-8455 / (800) 872-9992 Voice
cgriffin@dlc-ma.org
seichner@dlc-ma.org
rglassman@dlc-ma.org

Timothy P. Fox*
Sarah M. Morris*
CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER
104 Broadway, Suite 400
Denver, CO 80203
Telephone: (303) 757-7901
tfox@creeclaw.org
smorris@creeclaw.org

Bill Lann Lee*
Julie Wilensky*
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
476 9th Street
Oakland, CA 94607-4048
Telephone: (510) 839-6824
blee@lewisfeinberg.com
jwilensky@lewisfeinberg.com

Caroline E. Jackson, Esq.*
Marc P. Charmatz, Esq.*
THE NATIONAL ASSOCIATION OF THE DEAF
LAW AND ADVOCACY CENTER
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
TTY: (301) 587-1789
caroline.jackson@nad.org
marc.charmatz@nad.org

*Attorneys for Plaintiffs and Proposed Plaintiff Class*

Dated: February 12, 2015

* Application for admission *pro hac vice* forthcoming