UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

NATIONAL ASSOCIATION OF THE DEAF, on behalf of its members, C. WAYNE DORE, CHRISTY SMITH, LEE NETTLES, and DIANE NETTLES, on behalf of themselves and a proposed class of similarly situated persons defined below,

Plaintiffs,

v.

HARVARD UNIVERSITY, and the PRESIDENT AND FELLOWS OF HARVARD COLLEGE,

Defendants.

---

Civil Action No. 15-30023-MGM

**Oral Argument Requested**

## DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

GOODWIN PROCTER LLP
Roberto M. Braceras (BBO# 566816)
Stephen M. Hoeplinger (BBO# 676219)
Exchange Place
Boston, Massachusetts 02109
Tel.:  617.570.1000
Fax:  617.523.1231
rbraceras@goodwinprocter.com
shoeplinger@goodwinprocter.com

William M. Jay (*pro hac vice*)
901 New York Avenue, N.W.
Washington, DC 20001
Tel.:  202.346.4000
Fax:  202.346.4444
wjay@goodwinprocter.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................4

    I.    Title III Does Not Require the Pre-Emptive Captioning Plaintiffs Demand. ..........4

        A.    Title III Does Not Require Harvard to Create Accessible Content
            or Alter the Nature of Its Goods or Services................................................. 4

        B.    Plaintiffs' "Caption Or Remove" Demand Runs Contrary to Title
            III's Requirement That Reasonable Accommodations Be Based on
            an Individualized, Case-Specific Inquiry..................................................... 9

        C.    There Are No Guidelines Requiring Captioning of Website
            Content. ..................................................................................................... 11

    II.    Section 504 of the Rehabilitation Act Does Not Require the Universal,
        Pre-Emptive Captioning Plaintiffs Demand. ...........................................................12

        A.    Captioning Everything Is Not Required By Section 504 Because It
            Would Require a Fundamental Alteration of the Websites and
            Their Content. .......................................................................................... 12

        B.    Neither Section 504 Nor Its Regulations Require Widespread, Pre-
            Emptive Captioning For Non-Students..................................................... 15

    III.    This Case Should Be Stayed Under the Primary Jurisdiction Doctrine
        Because It Involves Complex Legal and Factual Questions of First
        Impression, and the Court Would Benefit From the DOJ's Rulemaking. .............18

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Alexander v. Choate,*
    469 U.S. 287 (1985) ........................................................................................................ 13

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envt'l Protection,*
    196 F.3d 302 (1st Cir. 1999) .......................................................................................... 20

*Auer v. Robbins,*
    519 U.S. 452 (1997) ........................................................................................................ 17

*Ball v. AMC Entertainment, Inc.,*
    246 F. Supp. 2d 17 (D.D.C. 2003) .................................................................................. 8

*Bercovitch v. Baldwin Sch., Inc.,*
    133 F.3d 141 (1st Cir. 1998) .......................................................................................... 12

*Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,*
    37 F.3d 12 (1st Cir. 1994) .............................................................................................. 11

*Christopher v. SmithKline Beecham Corp.,*
    132 S. Ct. 2156 (2012) ................................................................................................... 17

*Doe v. Mut. of Omaha Ins. Co.,*
    179 F.3d 557 (7th Cir. 1999) .................................................................................. *passim*

*Dudley v. Hannaford Bros. Co.,*
    333 F.3d 299 (1st Cir. 2003) ........................................................................................... 9

*Ford Motor Credit Co. v. Milhollin,*
    444 U.S. 555 (1980) ......................................................................................................... 9

*Fulton v. Goord,*
    591 F.3d 37 (2d Cir. 2009) ....................................................................................... 13, 14

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.,*
    603 F.3d 666 (9th Cir. 2010) ....................................................................................... 7, 8

*Goldstein v. Harvard Univ.,*
    77 F. App'x 534 (1st Cir. 2003) ...................................................................................... 9

*Greater L.A. Agency on Deafness, Inc. v. Cmty. Television of S. Cal.,*
    719 F.2d 1017 (9th Cir. 1983) ....................................................................................... 14

*Gross v. Symantec Corp.,*
    2012 WL 3116158 (N.D. Cal. July 31, 2012) ................................................................ 6

*Innes v. Bd. of Regents*,
   2015 WL 1210484 (D. Md. Mar. 16, 2015)................................................................12

*Keyishian v. Bd. of Regents*,
   385 U.S. 589 (1967).......................................................................................................2

*Mashpee Tribe v. New Seabury Corp.*,
   592 F.2d 575 (1st Cir. 1979).......................................................................................18

*McNeil v. Time Ins. Co.*,
   205 F.3d 179 (5th Cir. 2000) ....................................................................................4, 5

*Nathanson v. Med. Coll. of Pa.*,
   926 F.2d 1368 (3d Cir. 1991)................................................................................13, 14

*National Association of the Deaf v. Netflix, Inc.*,
   869 F. Supp. 2d 196 (D. Mass. 2012) ........................................................................11

*Nunes v. Mass. Dep't of Corr.*,
   766 F.3d 136 (1st Cir. 2014).................................................................................13, 14

*Pearl Invs., LLC v. Standard I/O, Inc.*,
   257 F. Supp. 2d 326 (D. Me. 2003) ..............................................................................7

*Rendon v. Valleycrest Productions, Ltd.*,
   294 F.3d 1279 (11th Cir. 2002) ..................................................................................13

*Rottner v. AVG Techs. USA, Inc.*,
   943 F. Supp. 2d 222 (D. Mass. 2013) ...........................................................................6

*Rymes Heating Oils, Inc. v. Springfield Terminal Ry. Co.*,
   358 F.3d 82 (1st Cir. 2004)..........................................................................................18

*Sys. Am., Inc. v. Rockwell Software, Inc.*,
   2007 WL 218242 (N.D. Cal. Jan. 26, 2007) .................................................................7

*United States v. Philadelphia Nat'l Bank*,
   374 U.S. 321 (1963).....................................................................................................18

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000) ......................................................................................5

*Wynne v. Tufts Univ. Sch. of Med.*,
   976 F.2d 791 (1st Cir. 1992)........................................................................................15

**Statutes**

28 U.S.C. § 636..................................................................................................................4

42 U.S.C. § 12182 ..................................................................................................6

42 U.S.C. § 12186 ................................................................................................18

47 U.S.C. § 613 ....................................................................................................2

**Regulations**

28 C.F.R. pt. 35, app. A .......................................................................................20

28 C.F.R. § 36.303 ................................................................................................4

28 C.F.R. § 36.307 ....................................................................................4, 5, 6, 7

34 C.F.R. pt. 104, app. A. ...................................................................................15

34 C.F.R. § 104.4 ...........................................................................................15, 16

34 C.F.R. §§ 104.21-.23 ......................................................................................15

34 C.F.R. §§ 104.41-.47 ......................................................................................15

34 C.F.R. § 104.42 ..............................................................................................16

34 C.F.R. § 104.43 ..............................................................................................16

34 C.F.R. § 104.44 ..............................................................................................16

34 C.F.R. § 104.45 ..............................................................................................16

34 C.F.R. § 104.46 ..............................................................................................16

34 C.F.R. § 104.47 ..............................................................................................16

36 C.F.R. pt. 1191, apps. B & D .........................................................................11

47 C.F.R. § 79.4 ....................................................................................................2

**Other Authorities**

75 Fed. Reg. 56,316 .............................................................................................18

Department of Education, 2010 "Dear Colleague" Letter on Electronic Book
    Readers ........................................................................................................16, 17

Department of Education, Frequently Asked Questions About the 2010 "Dear
    Colleague" Letter ........................................................................................16, 17

DOJ Fall 2015 Statement of Regulatory Priorities ............................................19

*MOOCs for Everyone, But the Deaf*, THE BALTIMORE SUN (Mar. 22, 2015).................................8

H. Rosenbaum, *Make Online Education Accessible To All*, LOS ANGELES DAILY
    JOURNAL (Mar. 23, 2015) .........................................................................................................8

S. Rep. No. 101-116...................................................................................................................5

## **INTRODUCTION**

Defendant President and Fellows of Harvard College ("Harvard") respectfully objects to the Magistrate Judge's February 9, 2016 Report and Recommendation ("Report" or "R&R," ECF No. 50) to deny Harvard's motion to dismiss or, alternatively, to stay the case pursuant to the doctrine of primary jurisdiction ("Harvard's Motion" or "MTD," ECF No. 24).

The Report concluded that Plaintiffs have stated a claim based on a legal theory that is breathtaking in its novelty, scope, and implications. Members of the Harvard community currently make thousands of videos[1] available to the public on various websites,[2] free of charge. Citing Title III of the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973, Plaintiffs, members of the public with no relationship to Harvard, demand that Harvard caption for the hearing-impaired every single one of those videos, with the implication that Harvard would have to remove or refrain from posting any video without a caption. Adopting the Report would require this Court to read those antidiscrimination statutes in a way that no other court has. Plaintiffs' reading is legally incorrect and should be rejected.

Plaintiffs' theory is that a university, a school, or anyone else covered by Title III (places of "public accommodation") or the Rehabilitation Act (recipients of federal funds) commits *discrimination* if anyone affiliated with the institution posts a video publicly on the Internet without captioning—and flawless captioning to boot. But both the case law and the relevant federal regulation establish that the obligation not to discriminate, including the requirement to provide "auxiliary aids," does not require Harvard or the thousands of individuals under its umbrella to create accessible *content*. The analysis is the same as that applied to libraries, which

---

[1] Plaintiffs' requested injunction covers both audiovisual content and purely aural content, *e.g.*, podcasts. For convenience, Harvard refers to these materials collectively as "videos" herein.

[2] Harvard maintains that it has no connection to, or control over, many of the websites that would be covered by Plaintiffs' proposed injunction. References in this brief to "Harvard's websites" or "its websites" do not concede that Harvard controls the websites referenced in Plaintiffs' Complaint.

do not discriminate against the blind when they merely fail to stock the Braille edition of a particular book.  Any contrary interpretation would be untenable—*any* recipient of federal funding covered under the Rehabilitation Act, and *any* "public accommodation" covered under the ADA, down to the tiniest school, nonprofit museum, or food bank, would have to assume the burden of conforming all content it generates or posts to accommodate every conceivable disability—or else post nothing.

No statute, regulation, or case has required institutions with websites to assume that type of burden.  Regulatory standards issued under the ADA spell out in great detail how physical "places of public accommodation" must accommodate Americans with disabilities.  There is no such standard requiring accessible Web content; the DOJ has been struggling for years with how to write one, but has not yet done so.[3]

Placing such an onerous burden on online speech would be troubling in any context, but particularly so where, as here, it constrains academic freedom—a constitutional principle "of transcendent value" and "a special concern of the First Amendment."  *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967).  Plaintiffs seek to create a checkpoint on website content, at Harvard's expense, impeding access to what is now a free and bustling "marketplace of ideas."  *Id.*  Even where a university can afford to caption some videos, the prospect of waiting in a queue for centralized review and captioning would deter faculty and students from producing content in the first place, while the time and expense of captioning would in turn limit and delay the posting of such content.  That means less free content, less quickly available.  Live

---

[3] Plaintiffs do not (and cannot) argue that the Twenty-First Century Communications and Video Accessibility Act ("CVAA"), 47 U.S.C. § 613, requires captioning here.  The CVAA and its implementing regulations only require captioning of full-length online video programming "that was published or exhibited *on television* with captions." 47 U.S.C. § 613(c)(2)(A) (emphasis added); *see also* 47 C.F.R. § 79.4(b).  Congress's decision to regulate online video captioning under a separate statutory and regulatory scheme, as well as the absence of any similar regulations under Title III and Section 504, suggests that Title III and Section 504 impose no such requirement.

footage of newsworthy campus events would sit on the shelf waiting for captions.  Scientific

discussions that now are shared instantly across the world would be stifled, impeding academic

freedom and the advancement of science.

The Report repeatedly acknowledged the possibility that Plaintiffs' "caption or remove"

demand could change the nature of online content and subject universities to an undue burden,

but concluded that these considerations should be taken up only after discovery.  R&R at 12, 14,

25, 28.  But Plaintiffs must plead a cognizable legal theory of discrimination *before* discovery

begins.  The theory they have pleaded has nothing to do with accommodation of individuals with

disabilities; they instead demand that *everything* be captioned, meaning that all non-captioned

content must be removed.  *See* Compl. ¶ 75 (alleging that "[a]ll Plaintiffs have been . . . injured

by Harvard's failure to provide timely, accurate captioning of its publicly available online

content"), Prayer for Relief ¶ 2 (requesting "[i]ssuance of a permanent injunction requiring

Harvard to provide . . . comprehensive and accurate captioning of the online content that it

creates and/or produces, as well as the online content that it makes available on Harvard

Platforms") (ECF No. 1).  Harvard does not need to establish facts to demonstrate Plaintiffs'

ineligibility for relief; it is enough that the law does not support their demand.

The sheer breadth of Plaintiffs' theory shows that it reads "discrimination" too loosely,

and burdens protected speech too significantly, for this Court to accept the Report's

recommendations.  Discrimination does not include merely failing to offer products for the

disabled; as the Seventh Circuit held in rejecting a similarly ambitious ADA theory, had

Congress meant to place "so enormous a burden" on ADA defendants and "so vast a supervisory

responsibility on the federal courts," Congress "would have made its intention clearer and would

at least have imposed some standards."  *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th

Cir. 1999).  There is no such standard by which the Court can deem a student or professor's

online content "discriminatory" because it happens to lack captioning.  The case should therefore

be dismissed—or at a minimum stayed, under the primary jurisdiction doctrine, while DOJ

continues its attempts to develop appropriate standards for the online world.

## ARGUMENT

This Court must "make a de novo determination of those portions of the report . . . or

recommendations to which objection is made," 28 U.S.C. § 636(b)(1), and owes no deference to

the Report's legal conclusions.

## I.      Title III Does Not Require the Pre-Emptive Captioning Plaintiffs Demand.

Plaintiffs' Complaint fails to state a claim under Title III for three principal reasons.

First, Plaintiffs' "caption or remove" demand would force Harvard to modify the content of the

goods and services it offers, which Title III does not require.  Second, Plaintiffs' demand would

deny Harvard the flexibility to craft a reasonable, appropriate auxiliary aid upon a bona fide

request from a disabled person, as Title III commands.  *See* 28 C.F.R. § 36.303(c)(1)(ii).  Third,

there are no guidelines requiring captioning of web content.  Absent concrete requirements,

maintaining a public website that includes uncaptioned videos does not amount to unlawful

discrimination under Title III.

### A.      Title III Does Not Require Harvard to Create Accessible Content or Alter the Nature of Its Goods or Services.

Title III regulates access only to a public accommodation's *existing* goods and services;

"the plain language of the statute demonstrates that a business is not required to alter or modify

the goods or services it offers to satisfy Title III."  *McNeil v. Time Ins. Co.*, 205 F.3d 179, 186

(5th Cir. 2000).  Consistent with that principle, a federal regulation makes clear that a public

accommodation is not required "to alter its inventory to include accessible or special goods."  28

C.F.R. § 36.307(a).  No public accommodation is required to *create* accessible content, or to

change the nature of the content that it provides.  According to the Report, this regulation means

that Harvard can be required to change the nature of the content it provides if that content is a

"service," not a good, and "Plaintiffs have alleged that Harvard provides the service of making

audiovisual content publicly available for free online."   R&R at 25.  This conclusion

misinterpreted the statute, the regulation, and the nature of the content posted on Harvard's

websites.

    *First*, Harvard's argument is grounded in the statute, not just the regulation.  *Title III* does

not require Harvard to create or provide accessible goods or services; that is equally true of "a

furniture store's decision not to stock wheelchairs" (a good) and "a psychiatrist's refusal to treat

schizophrenia" (a service).  *Doe*, 179 F.3d at 560.  Accordingly, whether web content is a good

or service is immaterial, as Harvard "need not modify or alter the goods *and services* that it

offers in order to avoid violating Title III." *McNeil*, 205 F.3d at 188 (emphasis added).  *Accord*

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000) ("The ordinary

meaning of [Title III's non-discrimination provision] is that whatever goods *or services* the place

provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods

*and services*.") (emphases added); *Doe*, 179 F.3d at 560 (Title III does not make it unlawful to

"refus[e] to configure *a service* to make it as valuable to a disabled as to a nondisabled

customer") (emphasis added).[4]  It is thus *Title III itself*, not just § 36.307 (cited by the Report),

that exempts Harvard from altering the content on its websites as Plaintiffs demand, regardless of

whether such content is deemed a "good" (which it is) or a "service."  That there is a regulation

specifically exempting goods, without mentioning services, does nothing to extend the ADA's

---

[4] Indeed, the legislative history of the ADA reveals that Congress, before enacting Title III, explained that "a bookstore need not braille its price tags, stock brailled books, or lower all its shelves so that a person who uses a wheelchair can reach all the books."  S. Rep. No. 101-116, 1989 WL 1176422, at *61 (1989).  The Report's construction—exempting goods, but not services—cannot be reconciled with the shelving example.

reach to regulate offerings of services.

In failing to address the limitation written into Title III itself, the Report misinterpreted the case law, although it noted that in *Doe*, a case Harvard cited, the Seventh Circuit did not apply § 36.307's "accessible or special goods" exception and instead "analyzed the issue before it by interpreting the *general Title III prohibition* on discrimination, 42 U.S.C. § 12182, which, by its terms, applies to *both 'goods' and 'services.'*"  R&R at 26-27 (emphases added) (citing *Doe*, 179 F.3d at 559-61).  *Doe* also made clear that the general prohibition does not regulate "the content of the goods *or services* offered."  179 F.3d at 560 (emphasis added).  The Report thus correctly acknowledged this statutory rule, but then failed to apply it.

**Second**, because Harvard's online videos are "goods," Plaintiffs' claims fail as a matter of law under § 36.307, which provides that public accommodations are not required to create or provide special goods to account for a patron's disability.  The Report, without much discussion or analysis, accepted Plaintiffs' conclusory assertion that the websites are a "service."  R&R at 25.  That is a *legal* assertion that the Court need not take as correct—and it is not correct.  The websites merely offer viewable digital content, in the same way that libraries provide books and video stores provide movies.  Books, movies, and online videos are all "goods."  Indeed, courts have recognized that digital content that does not require customization—such as the videos in question here—qualifies as a "good," not a "service."  *See, e.g.*, *Rottner v. AVG Techs. USA, Inc.*, 943 F. Supp. 2d 222, 230 (D. Mass. 2013) ("[C]ourts nationally have consistently classified the sale of a software package as the sale of a good[.]"); *Gross v. Symantec Corp.*, 2012 WL 3116158, at *9 (N.D. Cal. July 31, 2012) (plaintiff who "purchased and downloaded [defendant's] software from the internet, and did not install the software from a CD," purchased

6

a good, not a service).[5]  The websites are functionally no different from a library or video store.

Just as libraries and video stores have no obligation to stock an entire inventory of Braille books

or closed-captioned movies, *see Doe*, 179 F.3d at 559-60; 28 C.F.R. § 36.307(c), Harvard has no

obligation to provide captioning for the thousands of videos posted on its websites.

      To accept Plaintiffs' contrary argument—that Harvard provides a "service" when it

makes information available—would write the accessible goods exception entirely out of the

law.  All public accommodations that stock goods can be said to "provide a service" in making

those goods available to the public.  Harvard does provide a means of delivering digital goods,

like its videos, from Harvard-hosted sites to the public.  But to the extent Harvard has any

obligations in connection with that delivery *service*, Harvard would need only to provide all

auxiliary aids necessary to ensure that any captions already embedded in the *goods* are visible to

users of Harvard's services.[6]

      ***Third***, Plaintiffs' two movie-theater cases neither change this rule nor limit its

application.  The holding of *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*,

603 F.3d 666, 672 (9th Cir. 2010), is simply inapposite.  The *Harkins* plaintiffs did not demand

that the theater caption uncaptioned movies, but instead sought auxiliary aids that would allow

them to view movies that already were captioned.  The Ninth Circuit held only that Title III may

require theaters to ensure that patrons could access captions on films with captions.  603 F.3d at

668.  It did *not* hold that Title III requires theaters to make the goods themselves accessible—to

create captioning for movies that came *without* captions.  Plaintiffs go well beyond *Harkins* in

---

[5] The classification of digital content as a "good" or a "service" typically depends on whether the content is customized or mass-distributed.  *Cf. Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326, 353 (D. Me. 2003); *Sys. Am., Inc. v. Rockwell Software, Inc.*, 2007 WL 218242, at *4 (N.D. Cal. Jan. 26, 2007).  Plaintiffs allege that the videos in question are "publicly available for free to *anyone* with an Internet connection," not that the videos are in any way customized or "created from scratch" for each viewer.  Compl. ¶ 1 (emphasis added).  Accordingly, the videos are goods, not services.

[6] *See infra* at 7-8.

demanding that Harvard create captions not only for the thousands of videos already on the websites, but also for the incalculable number of videos Harvard may seek to post in the future.

The Report likewise misapplied *Ball v. AMC Entertainment, Inc.*, 246 F. Supp. 2d 17 (D.D.C. 2003). As in *Harkins*, that court merely held that theaters must provide devices allowing deaf individuals to view captions that came on disks provided by movie studios. *Id.* at 20 n.9. Critically, the *AMC* court held that "requiring installation of RWC [captioning devices] does not require exhibition of all RWC-compatible films." *Id.* at 25. Moreover, the only reason the plaintiffs' request for captioning equipment would *not* "fundamentally alter the nature or mix of the service [the theaters] provide" was that "closed captions for RWC-compatible films are provided free of charge to Defendants' movie theaters." *Id.*

*Harkins* and *AMC* in fact support Harvard's argument and compel dismissal here. Plaintiffs ask not for access to captions, but for an order compelling Harvard to *create* captions, at its own massive expense, for every single video posted on any of its websites by any of its staff, students, professors, affiliates, or others. *See* Compl. ¶ 75, Prayer for Relief ¶ 2. This would fundamentally change the websites' very nature. This case is not about Harvard's Massive Online Open Courses ("MOOCs"), which already are accompanied by rolling transcripts; rather, it concerns websites, both at Harvard and elsewhere, where University affiliates can post videos at will.[7] Currently, Harvard provides websites where people or entities affiliated with Harvard can record and post any video they wish—as soon as they wish, and in any language—to share around the world. Plaintiffs' demand would transform Harvard's role. Rather than simply providing a forum, Harvard would be put in the untenable position of having to review and caption each video before it could be posted anywhere online (much less in a

---

[7] Although Harvard's MOOCs already are captioned, Plaintiffs' public statements about the case curiously focus on the MOOCs. *See MOOCs for Everyone, But the Deaf*, THE BALTIMORE SUN (Mar. 22, 2015); H. Rosenbaum, *Make Online Education Accessible To All*, LOS ANGELES DAILY JOURNAL (Mar. 23, 2015) (same).

Harvard-administered forum), on pain of a contempt finding.  Harvard no longer would be

simply the host of a forum for ideas; instead it would become the gatekeeper, final arbiter, and

censor that decides what videos ultimately are allowed online.  There is no such requirement in

the ADA.

### B.    Plaintiffs' "Caption Or Remove" Demand Runs Contrary to Title III's Requirement That Reasonable Accommodations Be Based on an Individualized, Case-Specific Inquiry.

In the First Circuit, the reasonable accommodation made for a patron's disability must be

based on an individualized, case-specific inquiry.  *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299,

310 (1st Cir. 2003).  As the First Circuit has held, "even though an individualized inquiry will

consume more resources and involve less logical ease [than a bright line rule], such an

individualized inquiry is precisely what the ADA requires."  *Id*.  Plaintiffs' blanket, "one-size-

fits-all" approach fails this requirement because it deprives Harvard of the flexibility that Title III

and its implementing regulations grant all public accommodations.  That is an independent

ground for dismissal.

The Report incorrectly conflated Plaintiffs' demand with an actual individualized request

for accommodation.  The request-for-accommodation framework entails an interactive process

between the public accommodation and an individual who has presented with a disability.  *See,

e.g.*, *Goldstein v. Harvard Univ.*, 77 F. App'x 534, 537 (1st Cir. 2003).  The individual requests

an accommodation, and the covered entity must determine if a reasonable accommodation is

available.  A pre-emptive, generalized requirement to caption all Internet content—which

Plaintiffs demand—sits entirely outside this framework.  To the extent accommodations are *per

se* required in all cases prior to any request, they are imposed by regulation, not by judicial

interpretation of the general term "discriminat[ion]."  *Cf. Ford Motor Credit Co. v. Milhollin*,

444 U.S. 555, 565 (1980) (noting that "caution must temper judicial creativity in the face of

legislative or regulatory silence").

The absence of any request for accommodation is meaningful here because, if Plaintiffs' "caption or remove" policy were implemented, Harvard would instantly violate the law any time one of its students, professors, or affiliates posted uncaptioned content online, whether or not any individual member of the public asks for captioning *or even tries to view the video*.  If any hearing-impaired person actually requested an accommodation for viewing a particular video or category of videos—which Plaintiffs have not alleged—Harvard may review the circumstances and ultimately decide to provide captioning or some other relief.  Whatever the end result, it would arise from Harvard's reasoned decision based on the particular facts of a specific request pursuant to Title III's individualized inquiry requirement—not a pre-emptive, one-size-fits-all injunction against speech online.

To be sure, Harvard does not believe that it necessarily must caption its free online videos as a reasonable accommodation to a hearing-impaired web surfer with no ties to the University. Plaintiffs, however, have not even presented that case: they instead seek to create a "comprehensive," whatever-the-circumstances anticipatory requirement out of whole cloth, with the result that any uncaptioned video content posted to the Internet violates the law, whether or not captioning is actually needed to make it accessible to a disabled person.  Compl., Prayer for Relief ¶ 2.  This is not the law.

Although the Report acknowledged that public accommodations are afforded flexibility in deciding whether an auxiliary aid is appropriate given the circumstances, *see* R&R at 24, it concluded that the reasonableness of any accommodation "is an affirmative defense" that must await fact development.  R&R at 25.  But Plaintiffs themselves framed their theory in a way that is clearly incompatible with the ADA as construed by the First Circuit.  Plaintiffs chose to espouse a bright-line rule that rejects the ADA's interactive framework.  The required

10

consequence is dismissal, not discovery.

      **C.**      **There Are No Guidelines Requiring Captioning of Website Content.**

The ADA delegates authority to the Department of Justice to write regulations imposing specific accessibility requirements on public accommodations in advance of any request for accommodation and whether or not any such request has been received.  The Department of Justice has applied that authority to promulgate the Accessibility Guidelines, 36 C.F.R. pt. 1191, apps. B & D, which set forth specific standards for places of public accommodation.  While the Accessibility Guidelines set the standards for how physical places of public accommodation must be constructed, they are silent as to the captioning of website content.

The Report's answer to this argument (*see* R&R at 23-24) was off-point.  The Magistrate Judge applied *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994), to conclude that "the phrase 'public accommodation' is not limited to 'actual physical structures.'"  R&R at 23.  But the Report's application of *Carparts* and then *National Association of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 202 (D. Mass. 2012), only established the principle that Title III *may* apply to Harvard's websites.[8]

The salient question is whether Title III's general prohibition against discrimination, separate and apart from any regulation, requires Harvard's websites to caption all video content. Regulators might well decide to impose such a captioning obligation on website content.  *See infra* at 19-20 (addressing DOJ's intention to issue Title II website accessibility regulations shortly).  They have not yet done so, and until they do, the Court should decline Plaintiffs'

---

[8] Harvard already had assumed this legal conclusion *arguendo* for purposes of this Motion, but reserves the right to challenge it at a later stage.  It is important to note that the *Netflix* court stopped short of considering what regulatory requirements might apply under the ADA, after it ruled that Netflix's streaming sites may be a place of public accommodation.  It only denied Netflix's motion to dismiss on this ground, and the case ultimately settled.

invitation to extrapolate a sweeping requirement to caption all web content from the ADA's generally stated nondiscrimination and auxiliary aids principles.  *See Doe*, 179 F.3d at 560 ("Had Congress purposed to impose so enormous a burden . . . it would have made its intention clearer and would at least have imposed some standards.").

## II.   Section 504 of the Rehabilitation Act Does Not Require the Universal, Pre-Emptive Captioning Plaintiffs Demand.

Plaintiffs likewise fail to state a claim under the Rehabilitation Act.  First, as discussed above, Plaintiffs' "caption or remove" demand would force Harvard to fundamentally alter its websites and the videos posted there.  Second, neither Section 504 nor its regulations apply to the websites in question: Plaintiffs advance a novel interpretation of the Rehabilitation Act that has never been endorsed by any court.[9]  Neither the Report nor Plaintiffs cited any case or regulation requiring an educational institution to provide "comprehensive" pre-emptive captioning not just for the benefit of its students, but for any casual visitor lacking affiliation or connection with the school.  Compl., Prayer for Relief ¶ 2.  In fact, no such authority exists, because Section 504 requires no such thing.

### A.   Captioning Everything Is Not Required By Section 504 Because It Would Require a Fundamental Alteration of the Websites and Their Content.

The Rehabilitation Act, which is interpreted "substantially identically" to Title III, *see Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 151 n.13 (1st Cir. 1998), does not require Harvard to change drastically the goods and services it makes available to the public.  As the Supreme Court has noted, "§ 504 does not impose an 'affirmative-action obligation on all recipients of federal funds'" where such actions would require "'changes,' 'adjustments,' or

---

[9] *Innes v. Bd. of Regents*, 2015 WL 1210484 (D. Md. Mar. 16, 2015), relied upon by Plaintiffs, does not help them. The *Innes* court did not address the ADA's applicability to Internet content, and instead resolved the defendants' summary judgment motion under the Rehabilitation Act, which the defendants did not argue was inapplicable to their website. *Id*. at *10.  Moreover, *Innes* involved videos on a single discrete website, in contrast to the potentially fathomless universe of content for which Plaintiffs here seek captioning. *See id*. at *1.

'modifications' to existing programs that would be 'substantial' or that would constitute 'fundamental alteration[s] in the nature of a program[.]'" *Alexander v. Choate*, 469 U.S. 287, 300 n.20 (1985). The Report incorrectly treated Plaintiffs' Rehabilitation Act claims as a request for "reasonable accommodation" under Section 504's general prohibition against discrimination. In reality, no such request has been made. Plaintiffs seek to fundamentally alter the manner in which Harvard scholars use the Internet and digital media to communicate their ideas. The Report failed to recognize that Plaintiffs' demand is precisely the type of "fundamental alteration" contemplated in *Choate*. If this Court were to impose the injunction Plaintiffs request, Harvard would no longer be able to provide an online forum for students, professors, and affiliates to share their ideas, as it does now, or to allow Harvard scholars to post their content elsewhere on the Internet without Harvard involvement. Instead, Harvard would be conscripted into a gatekeeping role, compelled to (1) ensure that the author/poster has embedded accurate closed captions in whatever is posted; (2) spend the time and resources to review, caption, and upload a potentially limitless number of videos itself; or (3) preclude all non-University-sponsored postings. Section 504 does not require such an undertaking.

Relying on inapposite cases, the Report concluded that deciding whether captioning is a "reasonable accommodation" or an unnecessary "affirmative action" will "require[] a fact intensive inquiry that is not suitable for resolution on a motion to dismiss." R&R at 14 (citing *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 146 (1st Cir. 2014); *Fulton v. Goord*, 591 F.3d 37, 44 (2d Cir. 2009); and *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1386 (3d Cir. 1991)).[10] But Plaintiffs are not asking for a mere accommodation, and reasonableness is not the question. Rather, Plaintiffs wish to change the very nature of how videos are posted—a question that can,

---

[10] The Report also cited *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002), to support this point, but misapplied its holding. There, the Eleventh Circuit did not examine whether the reasonableness of a proposed accommodation should be considered on a motion to dismiss; as the court noted, the "case *does not* involve issues regarding the reasonableness of any proposed accommodations." *Id*. (emphasis added).

and should, be addressed on a motion to dismiss, particularly as a court's ruling on the threshold question whether Section 504's reach extends to all of a funded entity's public-facing web content has implications far beyond this case.  The cases cited in the Report involved narrow requests for discrete accommodations for particular individuals, in sharp contrast to Plaintiffs' current demand for widespread, pre-emptive measures unrelated to any individualized request. In *Nunes*, the requested accommodation was extremely limited in scope: an individual prisoner requested a slightly different means of receiving his medication.  766 F.3d at 146.  In *Fulton*, the disabled wife of a prisoner sought an accommodation to visit her incarcerated husband.  591 F.3d at 44.  In *Nathanson*, a medical student requested special parking and seating arrangements to enable her to attend class.  926 F.2d at 1386.  In none of these cases did the plaintiff seek, or the court endorse, the type of boundless remedy a "caption or remove" order would entail.

Here, by contrast, Plaintiffs' "comprehensive" request for limitless captioning is so sweeping that it is not an accommodation at all, but a transformation.  Compl., Prayer for Relief ¶ 2; *see also* Compl. ¶ 75.  Plaintiffs are not seeking access to an existing program or activity; they want Harvard to *modify the nature of the videos* on its websites, in order to ensure that the videos include embedded captioning where none exists.  This demand goes far beyond what the Rehabilitation Act requires.  A federally funded entity "d[oes] not violate section 504 by failing to take affirmative action to caption or sign all of the" videos on its websites.  *Greater L.A. Agency on Deafness, Inc. v. Cmty. Television of S. Cal.*, 719 F.2d 1017, 1023 (9th Cir. 1983) (affirming dismissal of pre-emptive captioning claims).

Moreover, there is no reason to allow Plaintiffs' "caption-or-remove" request to proceed to discovery where the ultimate remedy sought is not legally cognizable.  Plaintiffs' push to expand the scope of Section 504 already has resulted in significant litigation costs.  It is fundamentally unfair for any school—whether it is an institution like Harvard or a local

14

community college—to bear such costs where Plaintiffs' claims simply are not legally viable.

    **B.**    **Neither Section 504 Nor Its Regulations Require Widespread, Pre-Emptive Captioning For Non-Students.**

The Rehabilitation Act, like the ADA, grants recipients of federal funds the flexibility to decide what auxiliary aids are necessary to reasonably accommodate a student's disability.  The First Circuit has explained the inherent need for such flexibility, declaring that "what is reasonable in a certain situation may not be reasonable in a different situation."  *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992).  The Department of Education (DOE) likewise has declared that, while a school must provide accommodations for disabled students, *e.g.*, by making readers available at its library, it is "not required to maintain a complete braille library."  34 C.F.R. pt. 104, app. A.  Plaintiffs' demand here actually goes one step further.  Plaintiffs would have Harvard not only maintain a Braille library, but also close its existing (public) libraries until it can translate all of its books into Braille.  *See* Compl. ¶ 75, Prayer for Relief ¶ 2.  Plaintiffs' rigid "caption or remove" demand is incompatible with the flexibility inherent in the statute and its implementing regulations.  For this reason, the Report erred in concluding that Plaintiffs' claims are covered under the general anti-discrimination provisions of Section 504 or 34 C.F.R. § 104.4.  R&R at 15-17.  Such broad relief, disjointed from review of an individual's specific needs—which necessarily entails an examination of the requestor's relationship to the University—is not permitted as a matter of law under the Rehabilitation Act.

Plaintiffs fare no better with other regulations promulgated under Section 504.  The DOE's facilities access rules, 34 C.F.R. §§ 104.21-.23, do not even mention, let alone require, accessibility of websites.  The DOE's rules for postsecondary institutions, 34 C.F.R. §§ 104.41-

.47, apply in specific situations, none relevant to this action.[11]  Finally, the regulation specifically

mentioning auxiliary aids, 34 C.F.R. § 104.44(d), applies only to students, not the general public.

*Id*. § 104.44(d)(1) ("A recipient . . . shall take such steps as are necessary to ensure that no

handicapped *student* is denied the benefits of, excluded from participation in, or otherwise

subjected to discrimination because of the absence of educational auxiliary aids for students[.]")

(emphasis added).

 Contrary to Plaintiffs' claim, neither the DOE's 2010 "Dear Colleague" Letter on

Electronic Book Readers ("DCL") nor the accompanying Frequently Asked Questions ("FAQ")

supports the extension of § 104.4 to online videos.  The DCL "address[ed] the obligations of

postsecondary institutions" to *students* "in connection with their use of *electronic book readers*,"

R&R at 17 (emphasis added), and not videos on websites.  The FAQ does state in passing that

"all school programs or activities—whether in a 'brick and mortar,' online, or other 'virtual'

context—must be operated in a manner that complies with Federal disability discrimination

laws."  R&R at 17.  But this single vague reference does not explain what "compli[ance] with

Federal disability discrimination laws" means in the context of a website—particularly here,

where the very purpose of the websites in question is to allow students, professors, and affiliates

to share their ideas instantly with the *public*.  Nowhere do the DCL or FAQ state, or even imply,

that federal law requires a university to caption every video on any website regardless of whether

it will ever be viewed by someone who is hearing impaired.  They certainly do not create such a

requirement for unaffiliated non-student visitors.  Nor can they alone, without actual rulemaking

by the DOE or DOJ, overwrite existing statutes and regulations to permit such relief.

 Moreover, because Plaintiffs' proposed "caption or remove" rule directly conflicts with

---

[11] These include: recruiting and admissions (34 C.F.R. § 104.42); academic, research, and other educational services (*id*. § 104.43); housing (*id*. § 104.45); financial aid and employment (*id*. § 104.46); and other "nonacademic services," including physical education and athletics, counseling, and social organizations (*id*. § 104.47).

existing regulations allowing for flexible, *individualized* determination of the appropriate

auxiliary aids, *see supra* at 15, the FAQ's reference to an "online, or other 'virtual' context" is

not entitled to the deference given to it by the Report.  *See* R&R at 17-18 (noting that a court

need not give deference to an agency's interpretation if it is "inconsistent with the regulation").

There is ample "reason to suspect that the agency's interpretation 'does not reflect the agency's

fair and considered judgment *on the matter in question*,'" *Christopher v. SmithKline Beecham*

*Corp.*, 132 S. Ct. 2156, 2166 (2012) (emphasis added) (quoting *Auer v. Robbins*, 519 U.S. 452,

462 (1997)), because neither the FAQ nor the DCL in fact address "the matter in question."  As

the Report acknowledged, these materials are "not directly on point"; they address the use of

electronic book readers by students at brick-and-mortar institutions, not the accessibility of

online videos by the general public.  R&R at 17.[12]

The Internet has been ubiquitous in our society for nearly two decades.  Both the DOE

and DOJ have had ample opportunity to implement comprehensive regulations governing

websites' content, and each may yet do so.  But the current regulations do not apply to websites,

and certainly not in the broad, expansive manner that Plaintiffs claim they do.  An open letter to

colleges regarding e-reading technology, even if it includes a passing reference to broader online

applicability, cannot substitute for deliberate rulemaking.  The United States' Statement of

Interest cannot do so either—especially when it declines to affirmatively interpret the

Rehabilitation Act to require universal captions.  The Court cannot reasonably expect Harvard,

or any university, to comply with standards that do not yet exist.

---

[12] As the Seventh Circuit has noted, deference to an *amicus* brief "cannot be very great when it is the brief of an agency that has, and has exercised, rulemaking powers yet has unaccountably failed to address a fundamental issue on which the brief takes a radical stance"—just as the DOJ and DOE have done (or rather, failed to do) here.  *Doe*, 179 F.3d at 563.

**III.    This Case Should Be Stayed Under the Primary Jurisdiction Doctrine Because It Involves Complex Legal and Factual Questions of First Impression, and the Court Would Benefit From the DOJ's Rulemaking.**

The primary jurisdiction doctrine requires courts to refrain from deciding cases "where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."  *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 353 (1963). In such instances, courts may either "stay the case pending an [agency] determination or . . . dismiss the case without prejudice."  *Rymes Heating Oils, Inc. v. Springfield Terminal Ry. Co.*, 358 F.3d 82, 91 n.9 (1st Cir. 2004).  The First Circuit considers three factors: whether (1) an agency determination lies "at the heart of the task assigned the agency by Congress"; (2) "agency expertise" is "required to unravel intricate, technical facts"; and (3) "the agency determination would materially aid the court."  *Mashpee Tribe v. New Seabury Corp.*, 592 F.2d 575, 580-81 (1st Cir. 1979).  Here, all three factors weigh heavily in favor of invoking primary jurisdiction.

Contrary to the Report's conclusion, the legal and factual issues presented in this case *do* "lie at the heart of the task assigned to DOJ by Congress."  R&R at 33.  The DOJ is charged by Congress to issue regulations interpreting Title III.  42 U.S.C. § 12186(b) ("the Attorney General *shall* issue regulations . . . to carry out the provisions of this subchapter") (emphasis added). And DOJ has long been considering what regulations are appropriate for website accessibility. 75 Fed. Reg. 56,316 (2011) (proposal expected "in the near future").  The Report acknowledged that such a task is within DOJ's ambit" and that DOJ "is considering" writing a standard.  R&R at 32-33.  However, the Report improperly focused on "the extent to which accommodations are required under the ADA and when such accommodations constitute an undue burden," which it thought "would be specific to Harvard."  R&R at 33.  That is not the case.  The question before this Court is whether—absent any regulations—the prohibition on "discrimination" includes requiring all universities to create captioning for all videos posted by their students, staff,

professors, and affiliates, or else remove those videos entirely so that no one can access them. Rather than a court case of first impression involving two universities and one advocacy group, the better forum is an agency proceeding allowing notice to, and comment by, everyone with a stake in this critically important issue.

The Report also erred in concluding that DOJ expertise is not necessary to unravel intricate technical facts.  R&R at 36-39.  Once again, it focused narrowly on the defenses of "undue burden" and "fundamental alteration," concluding that these would "not raise factual issues that call for any specialized expertise *of the DOJ*."  R&R at 36 (emphasis in original). But, for example, what type of content must be made accessible to avoid "discrimination," and what technology should be used, are matters for the agency's expertise.

The Report conceded that the proposed rules "may be of some aid to the court," but concluded that such aid would be "limited" because "[t]he court would still have to consider how the proposed rules might shed light on the specific questions presented in this case."  R&R at 39, 40.  However, the fact that the proposed rules "might shed light" on the issues here is precisely the reason to invoke primary jurisdiction.  The DOJ may well issue regulations stating that Title III does not apply to website content like Harvard's, or does not apply to all of the content Plaintiffs have put at issue.  Such a regulation could either end this litigation or narrow it, allowing the parties to appropriately focus the scope of discovery and avoid wasting resources.[13]

Last, the Report was incorrect that imposing a stay would prejudice Plaintiffs.  R&R at 44.  The Title II proposed regulations, which the DOJ has stated will serve as a framework for

---

[13] As the DOJ has noted, the regulations it intends to soon issue will consider "what standards, *if any*, [the DOJ] should adopt for web site accessibility," "whether the [DOJ] should adopt *coverage limitations* for certain entities," and whether there might be "other effective and reasonably feasible alternatives to making websites accessible."  *See* Fall 2015 Statement of Regulatory Priorities, *available at* http://www.reginfo.gov/public/jsp/eAgenda/ StaticContent/201510/Statement_1100.html ("DOJ Statement").

the Title III regulations, will be issued early this year,[14] hardly a material delay. Courts have

stayed cases for extended periods under the primary jurisdiction doctrine. *See, e.g., Ass'n of Int'l

Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envt'l Protection*, 196 F.3d 302, 303–05 (1st Cir.

1999). Moreover, the Court should keep in mind the type of "harm[]" and "prejudic[e]"

Plaintiffs, who themselves waited over a year to file their Complaint after serving Harvard with

their initial demand letter, would suffer if this case were stayed or dismissed. R&R at 44. They

will not be denied access to any good or service for which they have paid, or to study materials

for any degree or non-degree course in which they have enrolled. All they will have to do is wait

for the agency tasked with issuing appropriate regulations to do its job. Harvard, on the other

hand, risks incurring substantial costs to defend itself in a suit that forthcoming regulations may

render completely meritless. Moreover, proceeding with the litigation necessarily impairs and

chills the Harvard community's exercise of its rights to use the Internet to communicate ideas on

an equal footing with scholars across the country. The equities weigh heavily in favor of staying

or dismissing this action until the DOJ's new regulations are issued.

---

[14] *See* DOJ Statement, *id.* Although the proposed Title II regulations will not be binding on Harvard, they may well be instructive. While a requirement to caption online video content in the proposed Title II regulations would not necessarily carry over to the Title III regulations (given DOJ's recognition that state and local government websites, unlike those of private entities, play an important role "in providing access to public services" and "disseminat[ing] information citizens need to participate fully in civic life," 28 C.F.R. pt. 35, app. A), if the proposed Title II regulations do *not* require state and local governments to caption, it is extremely unlikely that the DOJ would require private universities to do so.

## **CONCLUSION**

For the foregoing reasons, as well as those articulated in Harvard's Memorandum in Support of Motion to Stay or Dismiss, Reply Memorandum in Support of Motion to Stay or Dismiss, and Notice of Supplemental Authority, the Court should reject the Report and either dismiss Plaintiffs' claims in their entirety or, at the very least, stay this matter until the DOJ can issue relevant regulations—as it intends to do shortly.

Dated: March 18, 2016                              Respectfully submitted,


                                                   /s/ Roberto M. Braceras
                                                   Roberto M. Braceras (BBO#  566816)
                                                   Stephen M. Hoeplinger (BBO# 676219)
                                                   GOODWIN PROCTER LLP
                                                   Exchange Place
                                                   Boston, Massachusetts  02109
                                                   Tel.:  617.570.1000
                                                   Fax:  617.523.1231
                                                   rbraceras@goodwinprocter.com
                                                   shoeplinger@goodwinprocter.com

                                                   William M. Jay (*pro hac vice*)
                                                   GOODWIN PROCTER LLP
                                                   901 New York Avenue, N.W.,
                                                   Washington, D.C. 20001
                                                   Tel.:  202.346.4000
                                                   Fax:  202.346.4444
                                                   wjay@goodwinprocter.com

                                                   *Attorneys for Defendant*



## CERTIFICATE OF SERVICE

I, Roberto M. Braceras, hereby certify that a copy of the foregoing document, filed through the
CM/ECF system, will be sent electronically to the registered participants as identified on the
Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage
prepaid on all counsel who are not served through the CM/ECF system on March 18, 2016.

                                                   /s/ Roberto M. Braceras


22