UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, on behalf of its members, C. WAYNE DORE, CHRISTY SMITH, LEE NETTLES, and DIANE NETTLES, on behalf of themselves and a proposed class of similarly situated persons defined below,<br><br>            Plaintiffs,<br><br>    v.<br><br>HARVARD UNIVERSITY, and the PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>            Defendants. | Civil Action No. 15-30023-MGM<br><br>Leave To File Granted On<br>April 29, 2016 |

**DEFENDANT'S REPLY IN SUPPORT OF ITS OBJECTIONS TO THE
<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**
GOODWIN PROCTER LLP
Roberto M. Braceras (BBO# 566816)
Stephen M. Hoeplinger (BBO# 676219)
Exchange Place
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
rbraceras@goodwinprocter.com
shoeplinger@goodwinprocter.com

William M. Jay (*pro hac vice*)
901 New York Avenue, N.W.
Washington, DC 20001
Tel.: 202.346.4000
Fax: 202.346.4444
wjay@goodwinprocter.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

I. Harvard Is Not Required To Stock An Inventory Of Captioned Videos............................1
    A. The Cases Analyzing Movie Theaters Make Clear That There Is No Requirement To Create Captioned Videos ..............................................................1
    B. The "Special Inventory" Rule Makes Clear That There Is No Requirement To Create Captioned Video .........................................................................................3
    C. NAD's "Caption or Remove" Rule Would Force Harvard to Offer Different Videos..........................................................................................................4

II. Plaintiffs Must Show Not Just That The Rehabilitation Act "Applies," But Also That It Requires What Plaintiffs Demand..............................................................5

III. Plaintiffs' Entire Legal Theory, Not Merely Their Requested Remedy, Is Not Cognizable ..........................................................................................................5

CONCLUSION....................................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ball v. AMC Entertainment, Inc.*,
 246 F. Supp. 2d 17 (D.D.C. 2003) ........................................................................... 2, 4

*Doe v. Mut. of Omaha Ins. Co.*,
 179 F.3d 557 (7th Cir. 1999) .................................................................................... 3, 4

*Dopico v. Goldschmidt*,
 687 F.2d 644 (2d Cir. 1982) ........................................................................................ 6

*State of Arizona ex rel. Goddard v. Harkins Administrative Services, Inc.*,
 603 F.3d 672 (9th Cir. 2010) .................................................................................... 2, 4

*McGann v. Cinemark USA, Inc.*,
 No. 15-423, 2016 WL 1294582 (W.D. Penn. Apr. 4, 2016) ........................................ 2

*Nat'l Ass'n of the Deaf v. Netflix, Inc.*,
 869 F. Supp. 2d 196 (D. Mass. 2012) ......................................................................... 4

*Rottner v. AVG Techs. USA, Inc.*,
 943 F. Supp. 2d 222 (D. Mass. 2013) ......................................................................... 3

**Other Authorities**

28 C.F.R. § 36.307(a) ........................................................................................................ 4

56 Fed. Reg. 35,544 (July 26, 1991) ................................................................................. 1

**INTRODUCTION**

Plaintiffs seek to make new law by expanding the Rehabilitation Act and the Americans with Disabilities Act ("ADA") far beyond any interpretation handed down by any prior court. Plaintiffs understandably would prefer a legal framework that requires places of public accommodation to offer accessible content, so that "whatever video a person chooses to watch" will be accessible to him or her. Plaintiffs' Reply to Defendants' Objections to the Magistrate Judge's Report and Recommendation ("Plaintiffs' Br.") 12. But that is not what the law requires, any more than it requires a library to stock a Braille edition of "whatever book a person chooses to read." This brief reply points out a few crucial respects in which Plaintiffs' argument contradicts existing authority.

**ARGUMENT**

**I.** **Harvard Is Not Required To Stock An Inventory Of Captioned Videos.**

In more than 20 pages of argument, Plaintiffs never dispute the bedrock proposition that neither the ADA nor the Rehabilitation Act requires Harvard to stock accessible goods. Video stores do not have to stock captioned videotapes; theaters do not break the law by showing movies made without captioning. 56 Fed. Reg. 35,544, 35567, 35571 (July 26, 1991). Yet both Plaintiffs and the Magistrate Judge's Report & Recommendation ("Report") contend that Harvard *does* violate the law by including any uncaptioned video on its websites. Years of case law and the applicable regulation confirm that the law does not require Harvard to maintain an inventory of captioned videos—much less to *replace* its current inventory with a captioned one.

    **A.** **The Cases Analyzing Movie Theaters Make Clear That There Is No Requirement To Create Captioned Videos.**

As Harvard's Objections ("Obj.") explain, two significant cases that both Plaintiffs and the Report cited actually support Harvard's Motion and draw a key distinction fatal to Plaintiffs' theory. The cases acknowledge that equipment to *display* captioning can be an auxiliary aid, but

the auxiliary-aid requirement does not extend to forcing moviemakers to *include* captioning in their movies—as Plaintiffs want included in videos on Harvard's websites. Plaintiffs do not even attempt to respond to that point and do not discuss either case beyond a bare citation.

Both cases involved caption-display *equipment* at movie theaters. *See State of Arizona ex rel. Goddard v. Harkins Administrative Services, Inc.*, 603 F.3d 672 (9th Cir. 2010); *Ball v. AMC Entertainment, Inc.*, 246 F. Supp. 2d 17 (D.D.C. 2003). The plaintiffs requested captioning devices that would allow deaf patrons to view captions that had been previously created by movie studios and distributed to theaters with captioning embedded. *Harkins*, 603 F.3d at 668; *Ball*, 246 F. Supp. 2d at 20 n.9.[1] They did *not* demand, and the courts accordingly did not order, that the movie theaters create any new captioning or turn away uncaptioned content, as Plaintiffs would have this Court do. As the *Ball* court explained, the plaintiffs' proposed injunction "d[id] not require exhibition of all [captioning]-compatible films," *i.e.*, it did not limit the theater to showing *only* films that came with captions. 246 F. Supp. 2d at 25. But that limitation is exactly what Plaintiffs' strict "caption or remove" policy would impose. Because Plaintiffs have no way to reconcile their position with these cases, they have chosen not to address them at all.

Moreover, the United States' position in *this* case—that Plaintiffs are not compelling Harvard to create a new, special inventory, which the ADA does not require, because captioning does not alter the content of the videos *per se*, *see* Statement of Interest of the United States of America (ECF No. 34) at 19–21—decidedly conflicts with its position in *Harkins*. There, the United States argued:

> A movie theater . . .would not need to alter its inventory in order to show closed captioned or described movies; rather, it would only have to acquire the necessary equipment to exhibit the closed captioned and described captioned and described movies

---

[1] *See also McGann v. Cinemark USA, Inc.*, No. 15-423, 2016 WL 1294582, at *8 (W.D. Penn. Apr. 4, 2016) (explaining that in *Ball*, "[captioned] films are provided free of charge by the movie studios" and also describing "standardized captioning and descriptive narration products created by the movie studios").

2

> it currently has in its inventory. . . . The proper analogy, then, is to a bookstore that *has* Brailled books in its current stock, but will not provide them to their patrons who are blind or have low vision.

U.S. Amicus Br. at 21, *Harkins*, No. 08-16075, ECF No. 51-1 (9th Cir. filed Feb. 6, 2009). The United States' prior position in *Harkins* acknowledges what Harvard has argued all along: that forcing a movie theater or a university to create and provide captioning (rather than simply showing films or videos) would indeed require it to "alter its inventory."

B. <u>The "Special Inventory" Rule Makes Clear That There Is No Requirement To Create Captioned Video.</u>

Plaintiffs seek to avoid the relevant principle—that Harvard is not required to provide special goods or services—by focusing narrowly on a particular regulation that applies that rule to "goods." Because the *regulation* focuses on "goods," Plaintiffs argue that the special-inventory principle should not apply to the videos on Harvard's websites, which Plaintiffs call a "service." *See* Plaintiffs' Br. 14-17. The distinction is both immaterial and incorrect.

<u>First</u>, the rule is grounded in Title III generally and not any particular regulation; thus, it applies to both goods and services. *See Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999) (exception applies to both "a furniture store's decision not to stock wheelchairs" (a good) and "a psychiatrist's refusal to treat schizophrenia" (a service)). *See* Obj. at 5-6.

<u>Second</u>, even if the regulation addressing "goods" were the sole basis of the special-inventory principle (and it is not), the videos *are* goods, and the regulation expressly precludes any reading of the law that would force Harvard to stock accessible videos. Plaintiffs' attempt to redefine the videos as a "service" is unavailing: all public accommodations that stock goods can be said to "provide a service" by making those goods available to the public. That cannot mean that the products they provide—like the videos here—are not goods. *See, e.g., Rottner v. AVG Techs. USA, Inc.*, 943 F. Supp. 2d 222, 230 (D. Mass. 2013) (online software provided to the

3

public is a good, not a service).² Restricting the special-inventory principle to goods alone, but not the public accommodations that provide them, would read that principle out of the law entirely. *See* Obj. 6-7. At the end of the day, what Plaintiffs want is a new set of goods to consume—captioned videos.

      C.      <u>NAD's "Caption or Remove" Rule Would Force Harvard to Offer Different Videos.</u>

Although Plaintiffs spill much ink arguing that adding captioning to the videos would not change their content (Plaintiffs' Br. 3-6), courts have held otherwise. As discussed above, the decisions in *Harkins* and *Ball* were premised on the fact that movie studios provided theaters with pre-captioned films, which required no alteration whatsoever. *See Harkins*, 603 F.3d at 669 (explaining that movies were distributed "with descriptive narration capability"); *Ball*, 246 F. Supp. 2d at 25 ("Plaintiffs only request that Defendants provide the auxiliary aids necessary to ensure that deaf and hard of hearing patrons are not denied access to the [captioning]-compatible movies *that Defendants screen*." (emphasis added)). In contrast, what Plaintiffs request here is a significant change *to the good provided*: captions where none exist.³

Plaintiffs also try to confuse the issue by noting that "adding closed captions would not cause any increase in inventory." Plaintiffs' Br. at 16. This argument is inapposite. The correct test is whether "the content of the goods or services offered by a place of public accommodation" would be changed, *Doe*, 179 F.3d at 560, such as by "alter[ing] its inventory to include accessible or special goods," 28 C.F.R. § 36.307(a), not whether the public accommodation

---

² In *Netflix*, the court never addressed any good/service distinction, but Netflix provided not just video content but also the means of playing it. *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 199 (D. Mass. 2012).

³ Arguing that their demand would not change the content of the videos, Plaintiffs claim that their request is no different than providing a sign-language interpreter for a live speaker. But that is an inapt analogy; they are not asking for videos suitable for captioning, they are demanding *captioned videos*. If anything, their proposed accommodation is akin to insisting that Harvard host only speakers who can incorporate sign language into their *own* speech. That is not the law.

4

would be forced to "*expand* its inventory." Even if the expansion of inventory were a relevant factor, it would not help Plaintiffs' cause here. Based on Plaintiffs' strained interpretation of the ADA, Harvard must either create a captioned video for every uncaptioned one (an increase in inventory), or it must modify every uncaptioned video to include captions (a change in the content that every viewer sees). Either way, Harvard would be forced to "alter its inventory" by changing its content. That is precisely what Title III does not require, just as it does not require libraries either to stock Braille books *or* to replace their inventory with combination Braille-and-text books.

II.  **Plaintiffs Must Show Not Just That The Rehabilitation Act "Applies," But Also That It Requires What Plaintiffs Demand.**

Plaintiffs' argument that Section 504 of the Rehabilitation Act "applies to websites" is completely beside the point. Section 504 "applies" to a federally-funded university library, and a library therefore may not turn away disabled patrons, but it *may* choose not to stock Braille versions of all its books. The relevant question is not whether Section 504 "applies to" libraries or websites, but whether its general prohibition on discrimination regulates the selection of particular books or website content. The answer is no.

III. **Plaintiffs' Entire Legal Theory, Not Merely Their Requested Remedy, Is Not Cognizable.**

Plaintiffs argue that "[e]ven if the Court were to find that the full extent of relief sought here would be a fundamental alteration and is not obtainable under Section 504, that would not support dismissal at this juncture," and that "the scope of the remedy sought is not a proper basis for dismissal." Plaintiffs' Br. 6. Plaintiffs mischaracterize Harvard's argument. Harvard does not merely challenge Plaintiffs' proposed remedy, but rather their entire legal theory. Plaintiffs' Complaint rests on the premise that posting a single uncaptioned video by any Harvard affiliate—regardless of whether any deaf person will ever view the video—is unlawful

5

discrimination.  Compl. ¶ 75 (calling for "timely, accurate captioning of Harvard's publicly available online content").  For reasons already explained in Harvard's Objections, neither Section 504 nor the ADA supports such a categorical and boundless theory.

*Dopico v. Goldschmidt*, 687 F.2d 644, 650 (2d Cir. 1982), which Plaintiffs cite, in fact supports dismissal here.  Although *Dopico* held that dismissal was unwarranted because "more modest relief" was available, the court there was "not faced with an all-or-nothing choice of remedies."  Plaintiffs' "caption-or-remove" theory, by contrast, is the epitome of an "all-or-nothing choice of remedies."  *Id*.  Because Plaintiffs are "not entitled to any relief" on that incorrect legal theory, this case can and should be dismissed.  *Id*. at 649.

## CONCLUSION

For the foregoing reasons, as well as those articulated in Harvard's objections and motion papers, the Court should sustain Harvard's objections and grant the motion to dismiss.

Dated: April 29, 2016

Respectfully submitted,

/s/ Roberto M. Braceras
Roberto M. Braceras (BBO# 566816)
Stephen M. Hoeplinger (BBO# 676219)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
Tel.:  617.570.1000
Fax:  617.523.1231
rbraceras@goodwinprocter.com
shoeplinger@goodwinprocter.com

William M. Jay (*pro hac vice*)
901 New York Avenue, N.W.
Washington, DC 20001
Tel.:  202.346.4000
Fax:  202.346.4444
wjay@goodwinprocter.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be served on April 29, 2016 electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and by first-class mail, postage prepaid on those identified as non-registered participants.

/s/ Roberto M. Braceras